The State of Ohio, Appellee, *v.* Farris, Appellant.

[Cite as *State v. Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255.]

(No. 2004–0604—Submitted April 27, 2005—Decided July 12, 2006.)

Pfeifer, J.

### Factual and Procedural Background

{¶ 1} On the afternoon of December 18, 2002, Ohio Highway Patrol Trooper Richard Menges stopped appellant, Stephen F. Farris, for speeding on U.S. Route 30, in Wooster.  Once Farris pulled over and stopped his vehicle, Menges approached on the right side of the car.  When Farris lowered the passenger window, Menges smelled a light odor of burnt marijuana coming from inside the car.  Menges had not observed Farris smoking, nor did he see him throw anything out a window.

{¶ 2} Menges asked Farris to step out of the car.  He did not conduct a field sobriety test on Farris, but did conduct a pat-down search and found no evidence of contraband or drugs.  Menges took Farris's car keys and requested that Farris sit in the front seat of the police cruiser.

{¶ 3} While they were seated in the front of the cruiser, Menges told Farris that he had smelled marijuana in the car.  Without administering a *Miranda* warning or seeking consent to search the car, Menges asked Farris about the smell of marijuana.  Farris told Menges that his housemates had been smoking

marijuana when he left the house. Menges told Farris that he was going to search the car and then specifically asked whether there were any drugs or drug devices in the car. Farris admitted that there was a "bowl," i.e., a marijuana pipe, in a bag in his trunk.

{¶ 4} Menges testified that after Farris made those statements, Menges immediately administered *Miranda* warnings, but did not tell Farris that his previous admissions could not be used against him. He then asked Farris the same questions and obtained the same responses regarding the location of the drug paraphernalia.

{¶ 5} Menges and a second trooper searched the interior of Farris's vehicle and found nothing. They then opened the trunk, searched it, and seized a closed, opaque container that held a glass pipe and cigarette papers. Farris was charged with a misdemeanor for possession of drug paraphernalia.

{¶ 6} Farris filed a motion to suppress certain statements that he had made to the highway patrol troopers and to suppress the evidence seized from the trunk of his car. On April 29, 2003, the trial court ruled that statements made prior to the *Miranda* warnings were to be suppressed but that statements made after the warnings were admissible. The trial court also ruled that the seized paraphernalia was admissible, as the trooper had probable cause to search the trunk of Farris's vehicle based solely on the odor of burnt marijuana coming from inside the car.

{¶ 7} After the trial court's evidentiary rulings, Farris entered a no-contest plea, and the trial court entered a judgment of conviction. Farris appealed, and the appellate court affirmed the trial court's holding. The appellate court held that Farris's statements—both before and after the *Miranda* warning—were voluntary and that once warned, he knowingly and intelligently waived his *Miranda* rights. The court further held that the search of the vehicle's trunk was proper because Farris's "admissible inculpatory statements relating to the drug paraphernalia gave the officer probable cause to search the trunk of [Farris's] vehicle without a warrant pursuant to the automobile exception."

{¶ 8} The cause is before this court upon the acceptance of a discretionary appeal.

## Law and Analysis

{¶ 9} This case presents several issues for our review: (1) whether the detention of Farris constituted an unreasonable seizure and thus violated the Fourth Amendment to the United States Constitution, (2) whether Farris was in custody when he made his pre-*Miranda* statements in the police vehicle, (3) whether the statements Farris made after receiving a *Miranda* warning confirming his pre-*Miranda* statements can be used against him, (4) whether the fruits of

Farris's post-*Miranda* statements are admissible, and (5) whether the above issues are irrelevant in this matter because an officer has probable cause to search an entire vehicle, including its trunk, when he smells the odor of burnt marijuana coming from the vehicle. We hold that Farris was not unreasonably detained; that he was, however, in custody; that his post-*Miranda* statements are inadmissible; that the physical evidence seized as a result of his statements is inadmissible pursuant to the Self–Incrimination Clause of.Section 10, Article I of the Ohio Constitution; and that with respect to the car, the officer had sufficient probable cause to search only the interior of the vehicle, not its trunk.

{¶ 10} Appellant argues first that he was being illegally· held by Officer Menges when he made his incriminating statements. In *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, this court held in paragraph one of the syllabus:

{¶ 11} "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."

{¶ 12} Here, Farris's extended detention was not based upon the purpose of the original stop, excessive speed, but was based upon Menges's detection of the scent of burnt marijuana. In *State v. Moore* (2000), 90 Ohio St.3d 47, 734 N.E.2d 804, a case involving the search of a driver and his car pursuant to a traffic stop, this court held, "The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle" without a warrant. Based on *Moore*, then, Farris's detention in order to effectuate a search was justified and did not violate the Fourth Amendment to the United States Constitution or its Ohio counterpart, Section 14, Article I of the Ohio Constitution.

{¶ 13} Having conceded below and in its memorandum opposing jurisdiction in this court that Farris was in custody for purposes of *Miranda*, appellee now argues that Farris was never in custody, rendering *Miranda* warnings unnecessary. A defendant need not be under arrest, however, to be "in custody" for *Miranda* purposes. Although a motorist who is temporarily detained as the subject of an ordinary traffic stop is not "in custody" for the purposes of *Miranda*, *Berkemer v. McCarty* (1984), 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317, if that person "thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." Id.

{¶ 14} Here, the officer's treatment of Farris after the original traffic stop placed Farris in custody for practical purposes. Officer Menges patted down

Farris, took his car keys, instructed him to enter the cruiser, and told Farris that he was going to search Farris's car because of the scent of marijuana. Farris was not free to leave the scene—he had no car keys and reasonably believed that he would be detained at least as long as it would take for the officer to search his automobile. The "only relevant inquiry" in determining whether a person is in custody is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317. We hold that a reasonable man in Farris's position would have understood himself to be in custody of a police officer as he sat in the cruiser.

{¶ 15} While in custody in the cruiser, Farris made virtually identical statements to Menges before and after Menges's recitation of the *Miranda* warning regarding the presence of drug paraphernalia in the trunk of his car. In *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643, the United States Supreme Court considered whether the technique of successive interrogations, first unwarned and then warned, violates a defendant's *Miranda* rights.

{¶ 16} In *Seibert*, an officer purposely and by design questioned a defendant without *Miranda* warnings for 30 to 40 minutes. After the defendant made an admission, the officer gave the defendant a 20–minute break. After the break, the same officer gave the defendant *Miranda* warnings, obtained a signed waiver, and resumed questioning, confronting the defendant with her prewarning statements. The defendant repeated her admission. The court referred to this interrogation technique as "question first" and wrote that "[t]he object of question-first is to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." Id. at 611, 124 S.Ct. 2601, 159 L.Ed.2d 643. The court held that the postwarning statements were inadmissible. Id. at 617, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 17} The overarching concern when considering the sufficiency of a *Miranda* warning is whether it is given in a manner that effectuates its purpose of reasonably informing a defendant of his rights. The words themselves are not magical and are not curative of interrogation mistakes that occur before it is given:

{¶ 18} "Just as 'no talismanic incantation [is] required to satisfy [*Miranda's*] strictures,' *California v. Prysock*, 453 U.S. 355, 359 [101 S.Ct. 2806, 69 L.Ed.2d 696] (1981) (*per curiam* ), it would be absurd to think that the mere recitation of the litany suffices to satisfy *Miranda* in every conceivable circumstance. 'The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda*." ' *Duckworth v. Eagan*, 492 U.S. 195, 203 [109 S.Ct. 2875, 106 L.Ed.2d 166] (1989) (quoting *Prysock, supra*, at 361 [101 S.Ct.

2806, 69 L.Ed.2d 696] )." *Seibert,* 542 U.S. at 611, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 19} In a question-first scenario in which the *Miranda* warning is withheld and the suspect makes inculpatory statements, the risk is that the warning will mean less when it is eventually recited:

{¶ 20} "The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires. Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier? For unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with *Miranda,* or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." *Seibert,* 542 U.S. at 611–612, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 21} *Seibert* points out that in "question first" scenarios when the circumstances of the given case show that the *Miranda* warning could not reasonably be found effective, the postwarning statements are inadmissible because "the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning." Id. at 612, 124 S.Ct. 2601, 159 L.Ed.2d 643, fn. 4. The court clearly rejected the "fruit of the poisonous tree" doctrine as a basis for exclusion. That doctrine holds that "evidence otherwise admissible but discovered as a result of an earlier violation [of Fourth Amendment rights] is excluded as tainted." Id.

{¶ 22} In rejecting the "fruit of the poisonous tree" doctrine for *Miranda* violations, the court relied on its earlier decision in *Oregon v. Elstad* (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222. *Seibert,* 542 U.S. at 612, 124 S.Ct. 2601, 159 L.Ed.2d 643, fn. 4. The court in *Elstad* held admissible a post-*Miranda* warning confession that followed a prewarning admission solicited by an officer while the suspect was in custody. *Elstad* and *Seibert* stand on opposite sides of the line defining where prewarning statements irretrievably affect postwarning statements. Still, that line cannot be said to be bright or sharply defined.

{¶ 23} In *Elstad,* police officers went to the home of the 18–year–old defendant with a warrant for his arrest. While one officer went to the kitchen to explain to the suspect's mother that her son was being arrested for the burglary of a neighbor's residence, another officer stayed with Elstad in the living room and had a brief discussion with him. The officer explained that the neighbor's house had been robbed and that he thought Elstad was involved. Elstad stated to the

officer, "Yes, I was there." *Elstad,* 470 U.S. at 301, 105 S.Ct. 1285, 84 L.Ed.2d 222.

{¶ 24} The officers then transported Elstad to the sheriff's department, and about one hour later, interviewed him in the office of one of the officers. One officer advised Elstad for the first time of his *Miranda* rights, reading from a standard card, without mentioning Elstad's previous statement. Elstad waived his rights and then made a full, detailed statement, explaining that he had known that the neighbors would be out of town and that he had been paid to help several people gain entry through a defective sliding glass door. He added that upon leaving the house, he received a "bag of grass" from another person involved in the robbery.

{¶ 25} An Oregon appellate court held the postwarning confession inadmissible. The *Elstad* court reversed. The court rejected the idea that a confession following an earlier, unwarned statement is inadmissible as "fruit of the poisonous tree." The court explained that evidence can be excluded as fruit of the poisonous tree only after a constitutional violation and that a failure to give *Miranda* warnings is not equivalent to a violation of the Constitution: " 'The prophylactic *Miranda* warnings * * * are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974); see *Edwards v. Arizona,* 451 U.S. 477, 492, 101 S.Ct. 1880, 1888, 68 L.Ed.2d 378 (1981) (Powell, J., concurring). Requiring *Miranda* warnings before custodial interrogation provides "practical reinforcement" for the Fifth Amendment right.' " (Footnote omitted.) *Elstad,* 470 U.S. at 305, 105 S.Ct. 1285, 84 L.Ed.2d 222, quoting *New York v. Quarles* (1984), 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550.

{¶ 26} The court in *Elstad* also rejected the defendant's "cat out of the bag" argument, that after an unwarned statement of guilt, there exists a "subtle form of lingering compulsion, the psychological impact of the suspect's conviction that he has let the cat out of the bag and, in so doing, has sealed his own fate." *Elstad,* 470 U.S. at 311, 105 S.Ct. 1285, 84 L.Ed.2d 222. The court wrote that "[t]his Court has never held that the psychological impact of voluntary disclosure of a guilty secret qualifies as state compulsion or compromises the voluntariness of a subsequent informed waiver." Id. at 312, 105 S.Ct. 1285, 84 L.Ed.2d 222.

{¶ 27} *Seibert* followed *Elstad* in rejecting a "fruit of the poisonous tree" analysis or "cat out of the bag" analysis. Instead, *Seibert* considers whether the sequential interrogations are essentially one continuous interrogation and whether an intermediate *Miranda* warning can be effective. Together with *Elstad,* *Seibert* establishes factors to consider in making the decision:

{¶ 28} "The contrast between *Elstad* and this case reveals a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first. In *Elstad*, it was not unreasonable to see the occasion for questioning at the station house as presenting a markedly different experience from the short conversation at home; since a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission.

{¶ 29} "At the opposite extreme are the facts here, which by any objective measure reveal a police strategy adapted to undermine the *Miranda* warnings. The unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill. When the police were finished there was little, if anything, of incriminating potential left unsaid. The warned phase of questioning proceeded after a pause of only 15 to 20 minutes, in the same place as the unwarned segment. When the same officer who had conducted the first phase recited the *Miranda* warnings, he said nothing to counter the probable misimpression that the advice that anything Seibert said could be used against her also applied to the details of the inculpatory statement previously elicited. In particular, the police did not advise that her prior statement could not be used. Nothing was said or done to dispel the oddity of warning about legal rights to silence and counsel right after the police had led her through a systematic interrogation, and any uncertainty on her part about a right to stop talking about matters previously discussed would only have been aggravated by the way [the officer] set the scene by saying 'we've been talking for a little while about what happened on Wednesday the twelfth, haven't we?' * * * The impression that the further questioning was a mere continuation of the earlier questions and responses was fostered by references back to the confession already given. It would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before. These circumstances must be seen as challenging the comprehensibility and efficacy of the *Miranda* warnings to the point that a reasonable person in the suspect's shoes would not have understood them to convey a message that she retained a choice about continuing to talk." Id. at 615–617, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 30} Applying the elements discussed in *Seibert* to the facts of this case, we hold that the interrogation here is much closer to *Seibert* than to *Elstad*. Here,

although the whole process was extremely brief, "[i]t would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before." *Seibert*, 542 U.S. at 616–617, 124 S.Ct. 2601, 159 L.Ed.2d 643. Although the questioning was very simple, not in-depth, and not lengthy, it covered exactly the same subject both before the warning and after the warning. Both of Farris's statements were made in the police cruiser to the same police officer within moments of each other. Temporally and substantively, Menges's questioning of Farris constituted a single interrogation. Menges made no attempt to tailor the *Miranda* warning he eventually gave to the particular situation and did not convey any distinction whatsoever between statements that might come after the warning and those that came before. Thus, Farris was not in a position to make a *Seibert* informed choice. Id. at 612, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 31} A difference between this case and *Seibert* is the seeming lack of an official police strategy to intentionally bait suspects into talking before the *Miranda* warning and then repeating damaging statements later after the warning has been given. *Seibert* was a plurality opinion, leaving somewhat in doubt whether the intent of the officer in garnering the prewarning statement is important in determining whether a postwarning statement is admissible. Concurring in the judgment, Justice Kennedy wrote:

{¶ 32} "The plurality concludes that whenever a two-stage interview occurs, admissibility of the postwarning statement should depend on 'whether the *Miranda* warnings delivered midstream could have been effective enough to accomplish their object' given the specific facts of the case. * * * This test envisions an objective inquiry from the perspective of the suspect, and applies in the case of both intentional and unintentional two-stage interrogations. * * * In my view, this test cuts too broadly." *Seibert*, 542 U.S. at 621–622, 124 S.Ct. 2601, 159 L.Ed.2d 643 (Kennedy, J., concurring in judgment).

{¶ 33} However, in a dissent joined by Chief Justice Rehnquist and Justices Scalia and Thomas, Justice O'Connor wrote:

{¶ 34} "The plurality's rejection of an intent-based test is * * *, in my view, correct. Freedom from compulsion lies at the heart of the Fifth Amendment, and requires us to assess whether a suspect's decision to speak truly was voluntary. Because voluntariness is a matter of the suspect's state of mind, we focus our analysis on the way in which suspects experience interrogation. * * * Thoughts kept inside a police officer's head cannot affect that experience." *Seibert*, 542 U.S. at 624, 124 S.Ct. 2601, 159 L.Ed.2d 643 (O'Connor, J., dissenting).

{¶ 35} We agree with the *Seibert* plurality and dissent that the intent of the officer doing the questioning is not relevant in a *Miranda* analysis. The

suspect's state of mind is the key. To delve into the issue of whether the two-stage questioning was an intentional attempt to undermine *Miranda* complicates matters so much that it could muddy a clear and effective rule. (*Seibert* presented the rare case in which the officer admitted that the two-part questioning was intentionally coercive.) *Miranda* itself provides a bright line for police behavior, and we believe that a bright line is also necessary in these types of cases.

{¶ 36} Because the intent of the trooper was irrelevant here, and because Farris's postwarning statements were the same as his prewarning statements, we hold that Farris's postwarning statements were not the result of an informed choice and are therefore inadmissible.

{¶ 37} Although we have held that Farris's statements to Menges are inadmissible, we still must determine whether the physical evidence found as a result of his statements is also inadmissible. In *United States v. Patane* (2004), 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667, the court considered whether the failure to give a suspect a *Miranda* warning requires the suppression of the physical fruits of the suspect's unwarned but voluntary statements. The court concluded that the *Miranda* rule protects against violations of the Fifth Amendment's Self-Incrimination Clause, but does not apply to nontestimonial physical evidence.

{¶ 38} In *Patane*, the defendant was suspected of violating a restraining order. Police also suspected that the defendant, a convicted felon, might be in possession of a firearm. Officers arrested Patane at his home for violation of the restraining order; a detective started to advise Patane of his *Miranda* rights, but was interrupted by Patane, who said that he knew his rights. The officers never resumed the warning. The detective then asked Patane about the handgun he was suspected to have. Eventually, Patane told the detective that the pistol was in his bedroom and gave the detective permission to retrieve it. Patane was indicted for possession of a firearm by a convicted felon. Patane sought to have the gun suppressed as the fruit of an unwarned statement.

{¶ 39} The court wrote that "the core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial. * * * The Clause cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements." Id. at 637, 124 S.Ct. 2620, 159 L.Ed.2d 667. The court reiterated the court's rejection in *Elstad* and *Seibert* of the "fruit of the poisonous tree" doctrine in cases involving violations of the *Miranda* rule:

{¶ 40} "[J]ust as the Self-Incrimination Clause primarily focuses on the criminal trial, so too does the *Miranda* rule. The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn. For this reason, the exclusionary

rule articulated in such cases as *Wong Sun* [*v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, which established the 'fruit of the poisonous tree' doctrine] does not apply." *Patane*, 542 U.S. at 637, 124 S.Ct. 2620, 159 L.Ed.2d 667.

{¶ 41} The court held that violations of *Miranda* occur only at trial and only as to statements:

{¶ 42} "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial. And, at that point, '[t]he exclusion of unwarned statements * * * is a complete and sufficient remedy' for any perceived *Miranda* violation." *Patane*, 542 U.S. at 642, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667, quoting *Chavez v. Martinez* (2003), 538 U.S. 760, 790, 123 S.Ct. 1994, 155 L.Ed.2d 984.

{¶ 43} The court rejected the argument that physical evidence seized as a result of an unwarned statement is the practical equivalent of a statement:

{¶ 44} "[W]e have held that '[t]he word "witness" in the constitutional text limits the' scope of the Self–Incrimination Clause to testimonial evidence. [*United States v.*] *Hubbell* [2000], 530 U.S. [27] at 34–35, 120 S.Ct. 2037 [147 L.Ed.2d 24]. The Constitution itself makes the distinction. And although it is true that the court requires the exclusion of the physical fruit of actually coerced statements, it must be remembered that statements taken without sufficient *Miranda* warnings are presumed to have been coerced only for certain purposes and then only when necessary to protect the privilege against self-incrimination." (Footnote omitted.) *Patane*, 542 U.S. at 643–644, 124 S.Ct. 2620, 159 L.Ed.2d 667.

{¶ 45} Pursuant to the Fifth Amendment, then, the physical evidence seized by the troopers in this case was admissible. We must now consider whether the evidence was admissible pursuant to Section 10, Article I of the Ohio Constitution.

{¶ 46} The Ohio Constitution "is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups." *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus.

{¶ 47} In general, when provisions of the Ohio Constitution and United States Constitution are essentially identical, we should harmonize our interpretations of the provisions, unless there are persuasive reasons to do otherwise. *State v. Robinette*, 80 Ohio St.3d at 239, 685 N.E.2d 762. In *State v. Brown*, 99 Ohio

St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, syllabus, this court diverged from federal Fourth Amendment jurisprudence, holding that "Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors."

{¶ 48} To hold that the physical evidence seized as a result of unwarned statements is inadmissible, we would have to hold that Section 10, Article I of the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution. We so find here.

{¶ 49} Only evidence obtained as the direct result of statements made in custody without the benefit of a *Miranda* warning should be excluded. We believe that to hold otherwise would encourage law-enforcement officers to withhold *Miranda* warnings and would thus weaken Section 10, Article I of the Ohio Constitution. In cases like this one, where possession is the basis for the crime and physical evidence is the keystone of the case, warning suspects of their rights can hinder the gathering of evidence. When physical evidence is central to a conviction and testimonial evidence is not, there can arise a virtual incentive to flout *Miranda*. We believe that the overall administration of justice in Ohio requires a law-enforcement environment in which evidence is gathered in conjunction with *Miranda*, not in defiance of it. We thus join the other states that have already determined after *Patane* that their state constitutions' protections against self-incrimination extend to physical evidence seized as a result of pre-*Miranda* statements. *State v. Knapp* (2005), 285 Wis.2d 86, 700 N.W.2d 899; *Commonwealth v. Martin* (2005), 444 Mass. 213, 827 N.E.2d 198. Thus, the physical evidence obtained as a result of the unwarned statements made by Farris in this case is inadmissible pursuant to Section 10, Article I of the Ohio Constitution.

{¶ 50} Finally, the appellee argues that, even without Farris's statements, Menges had probable cause to believe that the car contained contraband due to his detection of the scent of marijuana and that the automobile exception to the warrant requirement permitted him to search the vehicle. See *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. However, the items seized are admissible only if Menges had the authority to search the *trunk* of Farris's vehicle and its contents based upon the scent of marijuana. This court did not extend the search of the vehicle to the trunk in *Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804, and we decline to do so here.

{¶ 51} A trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches. In *State v. Murrell* (2002), 94 Ohio St.3d 489, 764 N.E.2d 986, syllabus, this court held that "[w]hen a police officer has made a lawful custodial arrest of the occupant of an automobile,

the officer may, as a contemporaneous incident of that arrest, search the *passenger compartment* of that automobile." (Emphasis added.) The court was conspicuous in limiting the search to the passenger compartment.

{¶ 52} The odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. *United States v. Nielsen* (C.A.10, 1993), 9 F.3d 1487. No other factors justifying a search beyond the passenger compartment were present in this case. The officer detected only a light odor of marijuana, and the troopers found no other contraband within the passenger compartment. The troopers thus lacked probable cause to search the trunk of Farris's vehicle. . Therefore, the automobile exception does not apply in this case.

{¶ 53} Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., concur.

RESNICK, LUNDBERG STRATTON and O'DONNELL, JJ., concur in part and dissent in part.

---

**ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.**

{¶ 54} I concur with the majority's finding that the appellant, Stephen F. Farris, was not unreasonably detained, that he was in custody when he made his pre-*Miranda* statements, and that his post-*Miranda* statements are inadmissible. However, I strongly disagree with the majority's determination that the physical evidence seized from the appellant's trunk is inadmissible pursuant to Section 10, Article I of the Ohio Constitution, and its determination that the physical evidence is inadmissible because the officer had sufficient probable cause to search only the interior of the vehicle.

{¶ 55} The majority first concludes that the physical evidence is inadmissible pursuant to Section 10, Article I of the Ohio Constitution. In reaching this holding, the majority concludes that Section 10, Article I of the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution. We need not and should not make such a finding in this case. Rather, the admissibility of the physical evidence turns not on the determination of a *Miranda* violation, but on the examination of the law relating to searches of vehicles pursuant to the automobile exception to the warrant requirement.

{¶ 56} Under the Fourth Amendment, searches conducted without prior approval by a judge or a magistrate are per se unreasonable, subject to certain established and well-delineated exceptions. *Katz v. United States* (1967), 389

U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. One of these, the automobile exception, was set forth in *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. In *Carroll,* the United States Supreme Court held that a warrantless search of an automobile stopped by law enforcement officers who had probable cause to believe the vehicle contained contraband was not unreasonable under the Fourth Amendment. 267 U.S. at 155–156, 45 S.Ct. 280, 69 L.Ed. 543.

{¶ 57} The court again reviewed the automobile exception to the warrant requirement and specifically addressed the scope of the search in the case of *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. In that case, the court held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (Emphasis omitted.) Id. at 825, 102 S.Ct. 2157, 72 L.Ed.2d 572.

{¶ 58} We have expressly interpreted Section 14, Article I of the Ohio Constitution as affording the same protections as the Fourth Amendment to the United States Constitution. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762. In fact, this court has ruled that we should harmonize the Fourth Amendment and Section 14, Article I of the Ohio Constitution. *State v. Murrell* (2002), 94 Ohio St.3d 489, 496, 764 N.E.2d 986.

{¶ 59} This court has held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement." *State v. Moore* (2000), 90 Ohio St.3d 47, 48, 734 N.E.2d 804. In terms of the permissible scope of a warrantless search of a vehicle pursuant to the automobile exception, we held that "[w]here police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that may logically conceal the object of the search. (*United States v. Ross* [1982], 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572[,] followed.)" *State v. Welch* (1985), 18 Ohio St.3d 88, 18 OBR 124, 480 N.E.2d 384, syllabus.

{¶ 60} Despite this clear precedent, the majority concludes that the officer in the present case had sufficient probable cause to search only the interior of the vehicle, not its trunk. Inexplicably, the majority determines that the automobile exception does not apply in this case because no factors beyond the smell of burnt marijuana justified a search beyond the passenger compartment of the appellant's vehicle.

{¶ 61} The majority's decision in this case leaves the law on warrantless searches of vehicles seriously muddled. Although the majority holds that the scope of the search of the appellant's vehicle was limited to the passenger compartment, it fails to delineate which exception to the warrant requirement it

believes justifies the warrantless search of the appellant's vehicle. In determining that the automobile exception to the warrant requirement does not apply, the majority asserts that our decision in *State v. Moore*, which allowed the search of an automobile without a warrant based upon an officer's recognition of the smell of marijuana, limited the scope of the warrantless search of the appellant's vehicle in this case to the interior of the vehicle. The majority also claims that our decision in *State v. Murrell*, which addressed the search-incident-to-arrest exception to the warrant requirement, supports its conclusion that the scope of the warrantless search of the appellant's vehicle was limited to the passenger compartment of the vehicle.

{¶ 62} Our precedent makes clear that the smell of marijuana alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search an automobile pursuant to the automobile exception to the warrant requirement. *State v. Moore*, 90 Ohio St.3d at 48, 734 N.E.2d 804. We did not limit the scope of the search in *Moore* to the interior of the vehicle. Therefore, it is unquestionable that when the officer in this case smelled the odor of burnt marijuana coming from the appellant's vehicle, he had sufficient probable cause to search the automobile, including the trunk, pursuant to the automobile exception to the warrant requirement.

{¶ 63} Accordingly, I would affirm the appellate court's holding that the physical evidence seized from the appellant's trunk is admissible.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in the foregoing opinion.

---

Martin Frantz, Wayne County Prosecuting Attorney, for appellee.

Robert E. Kerper Jr., for appellant.