OPINION
{¶ 1} Defendant-appellant, Arthuro Hernandez, appeals his conviction in the Preble County Court of Common Pleas for one count of possession of cocaine and one count of possession of criminal tools. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} Appellant was indicted on April 3, 2006 on one count of possession of cocaine, a felony of the first degree, in violation of R.C. 2925.11(A) and (C)(4)(f) and one count of possession of criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A). The *Page 2 
charges stemmed from the seizure of 12 kilograms of cocaine, recovered from a spare tire on the underside of the vehicle he was driving after he was stopped for traffic violations on March 9, 2006. On August 14, 2006, appellant moved to suppress statements made and physical evidence seized at the time of his March arrest.
 {¶ 3} The court held a hearing on appellant's motion on August 29, 2006. At that hearing, Trooper Shawn Smart of the Ohio State Highway Patrol testified that on March 9, 2006, he was traveling east on I-70 in Preble County when he observed a 1993 Ford Explorer make a series of unsafe lane changes and traffic violations. Tpr. Smart explained that it was raining at that time with a great deal of blowing mist and rain, and described the vehicle's actions as "unsafe" and "uncalled for." Tpr. Smart initiated a traffic stop of the vehicle at approximately 1:55 p.m. He approached the vehicle and asked for appellant's driver's license and vehicle registration and spoke with appellant about the traffic violations. Appellant initially claimed that he owned the vehicle, but then quickly recanted and admitted that he had borrowed the vehicle from a friend. Tpr. Smart immediately noticed that appellant appeared nervous, made only moderate eye contact, and that his hands were shaky. Appellant gave Tpr. Smart a Colorado driver's license, an insurance card, and registration in the name of his friend.
 {¶ 4} Because it was raining, and because appellant's initial answers were inconsistent and he was obviously nervous, Tpr. Smart asked appellant to step out of his vehicle. Tpr. Smart conducted a consensual pat-down of appellant and had him sit in the front of his patrol car. Tpr. Smart radioed appellant's license and registration information in to central dispatch to perform a standard validation check. This occurred approximately one to two minutes after placing appellant in his patrol car and approximately eight minutes into the traffic stop. Tpr. Smart continued to talk with appellant while awaiting a response on his license and registration check and asked appellant several questions about where he was *Page 3 
heading and why. Appellant indicated that he was traveling from Colorado Springs to New York to visit a friend. He was unable, however to clearly identify the specific location of where he was headed and changed his story as to who it was he was going to visit. Appellant also indicated that he was in the business of purchasing cars for sale in Mexico, but made remarks which led Tpr. Smart to believe that appellant did not actually know much about the business of transferring vehicles.
 {¶ 5} During the course of this conversation, because appellant continued to give inconsistent responses to his questions, Tpr. Smart determined that he wanted to walk his drug-sniffing canine, Rita, around appellant's vehicle. Tpr. Smart radioed for a back-up officer to assist with the canine sniff at approximately the tenth minute of the stop. When the back-up officer had not arrived by the 19th
minute of the traffic stop, Tpr. Smart decided to walk Rita around appellant's vehicle on his own. Tpr. Smart's canine alerted to several points on appellant's vehicle, indicating the presence of drugs. Tpr. Smart then conducted a probable cause search of appellant's vehicle and discovered 17 bricks, or approximately 12 kilograms of cocaine stashed in a spare tire on the underside of the car.
 {¶ 6} Tpr. Smart testified that it was not until sometime after his canine alerted to appellant's vehicle that he received the response from dispatch on his initial license and registration check. Tpr. Smart cited appellant for the initial traffic violations and arrested him for possession of cocaine. In a later interview at the garage where his vehicle was towed, after appropriate Miranda warnings, appellant admitted that he had been paid $5,000 to drive the car and that he knew that there were drugs stashed in it.
 {¶ 7} In issuing findings of fact at the suppression hearing, the court found that the duration of the stop went beyond that which would normally be required to effectuate the original purpose of the traffic stop. However, the court also found that the continued detention was justified by the circumstances that the trooper encountered. The court noted *Page 4 
appellant's inconsistent responses to the trooper's investigative questions with regard to ownership of the vehicle and the purpose of his trip from Colorado to New York. The court stated, "I'm not certain that those statements are to be suppressed at a suppression hearing. I mean, this is information that the officer has used to further, or in my opinion, anyway, to justify the further detention. And I'm not aware that they can't be used for that purpose."
 {¶ 8} In the court's entry, filed August 29, 2006, the trial court found that appellant was in custody for purposes of Miranda when Tpr. Smart questioned him in his patrol car. The court therefore granted appellant's motion in part, suppressing statements appellant made prior to receiving Miranda warnings.[1] The court also found that the detention of appellant went beyond that which would be necessary to investigate the purpose of the original stop. However, again noting appellant's inconsistent responses to Tpr. Smart's questions, the court found that Tpr. Smart had sufficient reasonable, articulable suspicion of criminal activity and was therefore justified in extending the detention and in conducting the canine-sniff. Finding that the search of appellant's vehicle was validly based on probable cause, obtained when the canine alerted to the presence of narcotics, the court denied the motion with regard to the physical evidence.
 {¶ 9} Thereafter, on October 16, 2006, appellant appeared in court and pled no contest to the two charges and was found guilty by the court. Appellant was subsequently sentenced to a mandatory minimum term of ten years in prison for the charge of possession of cocaine, to run concurrent with a 12-month prison term for the charge of possessing criminal tools. Appellant then filed the present appeal, seeking reversal of the trial court's decision denying his motion to suppress as applied to the physical evidence seized from his vehicle. Appellant raises the following assignment of error for our review:
1. Despite its earlier statement at the suppression hearing, the trial court did not identify which statements were suppressed and which, if any, were not. *Page 5 
 {¶ 10} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE PHYSICAL EVIDENCE OBTAINED AGAINST THE APPELLANT AS A RESULT OF A MIRANDA VIOLATION SHOULD NOT BE EXCLUDED AT TRIAL."
 {¶ 11} Appellant contends that the trial court improperly denied his motion to suppress the cocaine and physical evidence seized at the time of his March arrest. Appellant argues that the trial court properly suppressed his pre-Miranda statements, but then improperly used those same statements to justify the trooper's canine search of his vehicle. Because appellant's inconsistent statements prompted the officer to conduct a canine search of his vehicle, leading to the discovery of the cocaine, appellant argues that the physical evidence should have been excluded as "fruit of the poisonous tree." We disagree.
 {¶ 12} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Howard, Preble App. No. CA2006-02-003, 2006-Ohio-5656, ¶ 12, citingState v. Long (1998), 127 Ohio App.3d 328, 332. Because a trial court assumes the role of the trier of fact when considering a motion to suppress, and is therefore in the best position to resolve factual questions and evaluate witness credibility, an appellate court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. Id. However, an appellate court independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, "whether as a matter of law, the facts meet the appropriate legal standard." Id., quoting State v. Curry (1994), 95 Ohio App.3d 93, 96.
 {¶ 13} When conducting a stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped. Id. at ¶ 14; see, also, State v. Beltran, Preble App. No. CA2004-11-015, 2005-Ohio-4194, ¶ 16. The duration of the stop is limited to the time necessary to effectuate the purpose for which the stop was made, but includes the time *Page 6 
necessary to run a computer check on the driver's license, registration, and vehicle plates. Id. at ¶ 14-15; Delaware v. Prouse (1979),440 U.S. 648, 99 S.Ct. 1391. However, the detention may continue beyond this time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. Id. at ¶ 16, citing State v. Myers (1990),63 Ohio App.3d 765, 771.
 {¶ 14} In the case at bar, appellant does not challenge the initial stop of his vehicle or the trooper's probable cause to search once the canine alerted. Instead, this appeal focuses on the events taking place from the time Tpr. Smart stopped appellant's vehicle until the time his canine alerted to the presence of narcotics. Appellant focuses his argument on the fact that Tpr. Smart testified that he had determined that he would conduct the canine investigation of appellant's vehicle at approximately the tenth minute of the stop, due to the fact that appellant continued to appear nervous and continued to give inconsistent answers to the trooper's questions; answers which were later suppressed. Appellant asserts that the evidence recovered as a result of the determination based on those answers should have been suppressed also.
 {¶ 15} In support, appellant refers, as he did at the suppression hearing, to a recent Ohio Supreme Court case, State v. Farris,109 Ohio St.3d 519, 2006-Ohio-3255. The court in Farris held that "physical evidence obtained as the direct result of statements made in custody without the benefit of a Miranda warning should be excluded." Id. at ¶ 49. The court was referring to "question first" interrogation tactics, in which officers question a suspect without the benefit ofMiranda warnings and, upon obtaining an incriminating admission, provideMiranda warnings and get the suspect to incriminate himself again. Id.
 {¶ 16} The trial court considered appellant's argument underFarris and held that the case did not require suppression of the physical evidence seized in this case. We agree and find Farris
inapplicable to the situation represented by the facts of the case at bar. In Farris, *Page 7 
Ohio State Highway Patrol officers stopped Farris for speeding. When the investigating officer smelled a light odor of marijuana from inside the car, he conducted a field sobriety test and pat down search and placed Farris in the front seat of the police cruiser. Without administeringMiranda warnings, the officer asked Farris about the marijuana. Farris admitted that his roommates had been smoking marijuana. The officer then told Farris he was going to search his vehicle and "specifically asked whether there were any drugs or drug devices in the car." Id. at ¶ 3. Farris admitted that he had a marijuana pipe in a bag in his trunk. The officer then Mirandized Farris and "asked [him] the same questions and obtained the same responses regarding the location of the drug paraphernalia." Id. at ¶ 4. Officers then searched Farris' trunk and found a glass pipe.
 {¶ 17} In reversing the trial court's denial of Farris' motion to suppress the pipe, the Ohio Supreme Court extended the protections of Section 10, Article I of the Ohio Constitution to require the exclusion of physical evidence seized as a direct result of a violation of constitutional protections against self-incrimination. Id. at ¶ 48-49. In determining whether such "question first" interrogation tactics had been employed, the court looked to factors, identified in the United States Supreme Court case, Missouri v. Siebert (2004), 542 U.S. 600,124 S.Ct. 2601. Those factors include: the completeness and detail of the first set of questions; the overlapping content of the two phases of questioning; the timing and setting; continuity of police personnel; and the level with which the police treated the two phases as continuous. Id. at ¶ 28. The court explained that Miranda warnings can not reasonably be found effective in a question-first scenario and "the post-warning statements are inadmissible because `the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning.'" Id. at ¶ 21, quoting Siebert at 612. The court was careful to emphasize that "only evidence obtained as adirect result of statements made in custody without the benefit of aMiranda warning should be excluded." Id. at ¶ 49. (Emphasis added.) *Page 8 
We do not find that to be the situation represented by the facts of this case.
 {¶ 18} Tpr. Smart did not engage in the type of "question first" interrogation tactics condemned by Farris. Looking to the factors identified in that case, it is apparent that Tpr. Smart's investigation did not amount to a single, unwarned sequence of questioning. While Tpr. Smart's initial questions were posed in his patrol car during the traffic stop, appellant's post-Miranda confession was made at the garage where appellant's vehicle was towed after the search and his arrest. Further, while the initial set of questions posed by Tpr. Smart in this case were investigative; inquiring into the nature and destination of appellant's trip from Colorado to New York, the post-Miranda questioning was focused entirely on the discovery of the cocaine.
 {¶ 19} Additionally, none of the pre-Miranda statements directly led to the discovery of the cocaine in appellant's vehicle. The statements made by the appellant Farris, in which he admitted to possession of marijuana and told officers the location of paraphernalia, were inherently incriminating. Conversely, in the case at bar, the content of the statements made by appellant in response Tpr. Smart's questions during the traffic stop are not inherently incriminating. Rather, Tpr. Smart, through investigative questioning during a routine traffic stop, gathered a series of suspiciously inconsistent statements from appellant. As an officer with approximately 16 years of experience intercepting drug smuggling activities, these statements created in his mind a reasonable and articulable belief that appellant was engaged in criminal activity beyond that which prompted the original stop. The trial court correctly determined that Tpr. Smart was justified, based on this reasonable and articulable suspicion, in detaining appellant and conducting the canine sniff which led to the discovery of the cocaine.[2] *Page 9 {¶ 20} Further, we note that Farris stands for the proposition thatpost-Miranda statements and physical evidence discovered as a direct result of "question first" interrogation tactics and incriminatingpre-Miranda admissions may be suppressed. Nothing in the court's holding, however, suggests that pre-Miranda statements, amounting to reasonable and articulable suspicion of criminal activity, may not be used to justify extending the duration of a traffic stop in order to conduct an independent canine-sniff of a vehicle's exterior. We agree with the trial court that Tpr. Smart was justified in conducting the canine sniff of appellant's vehicle. Accordingly, the seizure of the cocaine discovered within was validly based on probable cause. Appellant's sole assignment of error is overruled. {¶ 21} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] Despite its earlier statement at the suppression hearing, the trial court did not identify which statements were suppressed and which, if any, were not.
[2] We note that a canine-sniff is not a search within the meaning of the Fourth Amendment and may be conducted within the time period necessary to effectuate the purpose of the original traffic stop without additional justification. State v. Bolden, Preble App. No. CA2003-03-007, 2004-Ohio-184. The state argues in its response brief that Tpr. Smart conducted the canine-sniff of appellant's vehicle prior to receiving the license and registration check information he had requested from dispatch, and therefore was still within that original time frame. However, the state did not independently appeal the trial court's determination that appellant was detained beyond the time necessary to effectuate the purpose of the original traffic stop and we therefore decline to challenge that finding in this case. *Page 1