[Cite as *State v. Arrasmith*, 2014-Ohio-4173.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-09-031 |
| | : | O P I N I O N |
| - vs - | | 9/22/2014 |
| | : | |
| ERIC N. ARRASMITH, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20130033

Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for plaintiff-appellee

Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for defendant-appellant

**PIPER, J.**

{¶ 1} Appellant, Eric N. Arrasmith, appeals a decision of the Madison County Court of Common Pleas denying his motion to suppress. For the reasons stated below, we affirm the decision of the trial court.

{¶ 2} The Madison County Sheriff's Office Drug Task Force (Drug Task Force) was conducting GPS surveillance of a vehicle owned and believed to be driven by a suspected

heroin trafficker, Danny Lee Sargent. Pursuant to a warrant, the Drug Task Force had been monitoring the vehicle by a GPS tracking device for a month. The information gathered by the GPS unit indicated that the vehicle would travel to Dayton, Ohio, where the occupants would allegedly steal items from stores. Additionally, the information indicated the participants then sold the stolen items, used the proceeds to purchase heroin, and sold the heroin in London, Ohio.

{¶ 3} On February 14, 2013, the Drug Task Force was conducting active surveillance of Sargent's vehicle. On that day, the vehicle had been in Dayton for approximately six hours but the Drug Task Force members were unaware if Sargent or any of the vehicle's occupants had been successful in purchasing drugs. As the vehicle was returning to Madison County, the Drug Task Force arranged with Madison County Sheriff Deputy Roger Heflin to stop the vehicle if he observed any traffic violations.

{¶ 4} There were three occupants in the vehicle, Sargent, who was driving the vehicle, Jarrod Mickle, who was seated in the front passenger seat, and Arrasmith, who sat in the backseat of the car. Deputy Heflin was aware that the vehicle as well as Sargent and Mickle were frequently involved in heroin transactions.

{¶ 5} Deputy Heflin began watching the vehicle for any traffic violations and observed it failing to signal a turn. Deputy Heflin then attempted to initiate a traffic stop by activating his cruiser lights and using his siren with intermittent burst of sound. Despite the cruiser lights and audible signals, the vehicle continued to drive for approximately a mile during which time Deputy Heflin observed considerable movement by Sargent, Mickle, and Arrasmith. Specifically, Deputy Heflin saw Arrasmith bend over in his seat toward the floor, appearing as though maybe he was trying to hide something in the area of his feet. Eventually, with the assistance of another law enforcement vehicle, Sargent's vehicle was stopped.

- 2 -

{¶ 6} Once the vehicle came to a stop, law enforcement officers ordered Sargent, Mickle, and Arrasmith to exit the car. There were three officers at the scene and Deputy Heflin was assigned to Arrasmith. Deputy Heflin was concerned for his safety due to the lengthy amount of time the vehicle took to stop and the furtive movements the occupants made while in the car. Therefore, Deputy Heflin instructed Arrasmith to place his hands on Sargent's vehicle so that he could perform a pat-down. During the pat-down, Arrasmith became agitated and began to tense, flex his arms, and push off the car with his hands. Deputy Heflin became concerned that Arrasmith would engage in a physical altercation with him and advised Arrasmith to remain still. Failing to comply, Arrasmith continued his unusual body posturing and Deputy Heflin decided it best to handcuff Arrasmith for officer safety.

{¶ 7} Deputy Heflin then resumed with the pat-down and felt a bulge in Arrasmith's right sock. Deputy Heflin didn't believe that the bulge was a weapon and spontaneously asked Arrasmith what the bulge was. Arrasmith replied that the bulge "was not his, but [that] he was asked to hold it" by Sargent. Deputy Heflin removed the bulge and found that it was a clear plastic bag that contained a number of clear capsules. The capsules were later discovered to contain heroin.

{¶ 8} On March 13, 2013, Arrasmith was indicted for possession of heroin, in violation of R.C. 2925.11(A). Arrasmith moved to suppress the evidence and the trial court held a hearing regarding the motion. The court overruled Arrasmith's motion reasoning that the initial traffic stop and the pat-down of Arrasmith were constitutionally valid and Deputy Heflin properly removed the drugs from Arrasmith's sock as the totality of the circumstances demonstrated probable cause for Deputy Heflin to believe the bulge was heroin. Thereafter, Arrasmith entered a "no contest" plea, was found guilty of possessing heroin and sentenced to a one-year term of imprisonment. Arrasmith now appeals, asserting a single assignment of error:

{¶ 9} THE COURT ERRED BY OVERRULING THE DEFENDANT'S MOTION TO SUPPESS [sic].

{¶ 10} Arrasmith challenges the trial court's decision to deny his motion to suppress the heroin found in his sock. Arrasmith argues that the drugs should have been suppressed because Deputy Heflin did not have the authority to remove the drugs. Specifically, Arrasmith maintains that the drugs could not be removed pursuant to the "plain feel" doctrine during a *Terry* pat-down because the incriminating nature of the bulge was not immediately apparent. Arrasmith also argues that the drugs should be suppressed because he was "in custody" for purposes of *Miranda* but not given *Miranda* warnings.

{¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *Id.*

{¶ 12} Arrasmith initially challenges the admission of the heroin based on his argument that the seizure of the drugs exceeded the scope of a *Terry* search. Both the Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution prohibits unreasonable searches and seizures. "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). However, a police officer may briefly stop and detain an individual without an arrest warrant or probable

cause for an arrest in order to investigate the officer's reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 19-21, 188 S.Ct. 1868 (1967); *State v. Bobo*, 37 Ohio St.3d 177 (1988).

{¶ 13} During a lawful traffic stop, police may order passengers out of the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882 (1997). Police may conduct a limited protective search for concealed weapons if police reasonably believe that a suspect may be armed or a danger to the officers or to others. *State v. Reiley*, 12th Dist. Clinton Nos. CA2004-12-028, CA2004-12-029, 2005-Ohio-3224, ¶ 4, citing *Terry* at 27 and *Bobo* at paragraph two of the syllabus. "The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *Id.*, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 61.

{¶ 14} The facts and circumstances apparent to Deputy Heflin at the time of the stop and detention led him to believe that Arrasmith may have been involved in drug trafficking. Thus, Deputy Heflin's right to frisk Arrasmith for weapons was "virtually automatic." The next question is whether Deputy Heflin exceeded the scope of the *Terry* search when he removed the bulge from Arrasmith's sock.

{¶ 15} A *Terry* search is limited in scope to a pat-down search of an individual's outer clothing for weapons. *Terry* at 29. The purpose of a *Terry* search is to protect the officer. *State v. Evans*, 67 Ohio St.3d 405, 414 (1993). "The protective pat down under *Terry* is limited to this purpose and cannot be employed by the searching officer to search for evidence of a crime." *Id.*

{¶ 16} While *Terry* limits the scope of a search to weapons, contraband discovered during such a search is not automatically inadmissible at trial. Under the "plain feel" doctrine, if, during a pat-down, the officer feels an object whose contour or mass makes its identity immediately apparent as contraband, the officer may seize the object. *State v. Davis*, 12th

Dist. Preble No. CA2006-10-024, 2007-Ohio-4360, ¶ 26, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375-376, 113 S.Ct. 2130 (1993). If the illegal nature of the suspicious object is not immediately apparent, the officer is not permitted to further manipulate the item to identify its nature. *Dickerson* at 375-376. Police must have probable cause to associate the object with criminal activity based on the totality of the surrounding circumstances to satisfy the "immediately apparent" requirement. *Id.*

{¶ 17} Arrasmith argues that Deputy Heflin exceeded the scope of the *Terry* search and could not remove the drugs under the "plain feel" doctrine because the incriminating nature of the bulge was not immediately apparent. Under all of the circumstances, even excluding Arrasmith's response to Deputy Heflin, it was immediately apparent Arrasmith was concealing contraband. Furthermore, we find that the seizure of the drugs was proper because Deputy Heflin had probable cause to believe Arrasmith had drugs and exigent circumstances existed.

{¶ 18} As stated above, a search or seizure is reasonable under the Fourth Amendment if it is based upon probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." *State v. Baker*, 12th Dist. Warren No. CA2009-06-079, 2010-Ohio-1289, ¶ 51, quoting *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168 (1959). A court must review the totality of the circumstances known to the officer at the time of the search to determine if the officer had probable cause to conduct the search. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223 (1964). If an officer has probable cause, the officer may conduct a search without a warrant if an exception to the warrant requirement exists. *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 17.

{¶ 19} In this case, while the initial stop, detention, and pat-down were in the nature of a *Terry* stop, the encounter quickly transformed and Deputy Heflin had probable cause to believe that Arrasmith was involved in drug activity and that the bulge contained drugs. Deputy Heflin was aware that the vehicle Arrasmith was riding in was used to traffic heroin from Dayton to London, two of the occupants of the vehicle were known drug traffickers, and on that day, the vehicle had traveled between London and Dayton and been in the Dayton area for six hours. Further, upon activating his cruiser lights and sirens, the vehicle did not immediately pull over and during this time Arrasmith and the other occupants in the car made furtive movements. During the pat-down, Arrasmith tensed up, flexed his arms, and was fidgeting. Lastly, the location of the bulge, in Arrasmith's sock, also suggested the bulge was contraband.

{¶ 20} Once Deputy Heflin acquired the requisite probable cause, he was authorized to remove the bulge based under the exigent circumstances exception to the warrant requirement. "[C]ertain situations present exigent circumstances that justify a warrantless search. Generally, there must be 'compelling reasons' or 'exceptional circumstances' to justify an intrusion without a warrant." *Moore*, 90 Ohio St.3d at 52, citing *McDonald v. United States*, 335 U.S. 451, 454, 69 S.Ct. 191 (1948). For example, "[a] warrantless search is * * * justified if there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." *Id.* "Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence." *Id.* In this case, because Deputy Heflin had probable cause to believe that the bulge in Arrasmith's sock contained drugs, a warrantless search was justified to remove the drugs because Arrasmith could have quickly hidden or destroyed them. Therefore, Deputy Heflin had the requisite probable cause and exigent circumstances to remove the drugs from Arrasmith's sock.

{¶ 21} Arrasmith's next argument is that he was "in custody" for purposes of *Miranda* and therefore he should have been administered his *Miranda* warnings prior to Deputy Heflin asking him what was in his sock. "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Johnson*, 12th Dist. Fayette No. CA2013-04-012, 2014-Ohio-1694, ¶ 10, quoting *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 34. "[T]he duty to advise a suspect of constitutional rights pursuant to *Miranda* * * * arises only when questioning by law enforcement rises to the level of a custodial interrogation." *State v. Vansickle*, 12th Dist. Fayette No. CA2013-03-005, 2014-Ohio-1324, ¶ 53.

{¶ 22} Under Section 10, Article I of the Ohio Constitution, physical evidence seized as a result of unwarned statements is inadmissible. *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 49. *See United States v. Patane*, 542 U.S. 630, 124 S.Ct. 2620 (2004) (nontestimonial physical evidence will not be suppressed under the U.S. constitution for a *Miranda* violation). However, "[o]nly evidence obtained as the direct result of statements made in custody without the benefit of *Miranda* warnings should be excluded." *Farris* at ¶ 49. In *Farris*, the Ohio Supreme Court suppressed drug paraphernalia found in the truck of the driver's vehicle when the driver, who was in custody for purposes of *Miranda*, informed the police that there was contraband in the trunk of his car, and was not administered his *Miranda* rights. *Id.* Importantly, in *Farris*, absent the driver's unwarned statement informing the police of the contraband in the trunk, the officers would not have had probable cause to search the trunk of the vehicle. *Id.* at ¶ 50. While the officer smelled an odor of marijuana coming from the inside of the car, this authorized police to conduct a warrantless search limited to the passenger compartment of the vehicle. *Id.* at ¶ 51-52, citing *State v. Murrell*, 94 Ohio St.3d 489 (2002), syllabus; *United States v. Nielsen*, 9 F.3d 1487 (10th Cir.1993).

{¶ 23} In this case, Arrasmith argues that he was subject to a custodial interrogation when Deputy Heflin asked him about the bulge in his sock. However, the heroin was not seized in violation of *Miranda* because the discovery of the heroin was not obtained as a direct result of Arrasmith's unwarned statement. Instead, the heroin was found because prior to the unwarned statement the totality of the circumstances had already established probable cause suggesting that Arrasmith was involved in drug activity and the bulge contained contraband.

{¶ 24} While Deputy Heflin could have removed the drugs at the moment he felt the bulge in Arrasmith's sock, he inquired as to the nature of the bulge and Arrasmith responded. Simply because Deputy Heflin had spontaneously asked Arrasmith about the bulge at the same time it was immediately apparent he had probable cause does not mean the drugs should be suppressed. Unlike, *Farris* where police only had cause to search the vehicle's trunk upon the defendant's statement, in this case Deputy Heflin had sufficient probable cause prior to Arrasmith's statement to justify the removal of the bulge. The drugs were not obtained as a direct result of Arrasmith's unwarned statement and accordingly should not be suppressed on the basis that *Miranda* warnings were not given to Arrasmith. *See State v. Rupp*, 11th Dist. Portage No. 2007-P-0095, 2008-Ohio-4052, ¶ 43-44; *State v. Hernandez*, 12th Dist. Preble No. CA2006-10-022, 2007-Ohio-5190, ¶ 19.

{¶ 25} The trial court did not err in denying Arrasmith's motion to suppress the evidence. Arrasmith's sole assignment of error is overruled.

{¶ 26} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.