OPINION
{¶ 1} In the instant appeal, submitted on the record and briefs of the parties, appellant, Gary R. Rupp, appeals the judgment of the Portage County Municipal Court, Ravenna Division, following a jury trial, convicting him of one count of Operating a Vehicle while Under the Influence of Alcohol, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(d). We affirm the judgment of the lower court. *Page 2 
 {¶ 2} On June 7, 2006, at 10:24 p.m., Trooper Mike Helmick of the Ohio State Highway Patrol was on routine patrol traveling westbound on the Ohio Turnpike, near mile marker 197 in Shalersville Township, Ohio, when he observed a black Chevrolet two-door, driven by Rupp, exiting the Service Plaza. When merging into traffic, Rupp's vehicle crossed three lanes without signaling, proceeded to accelerate, and crossed back into the center lane without signaling. Following behind, Trooper Helmick was able to estimate the speed of the vehicle at eighty miles per hour.
 {¶ 3} Based upon the aforementioned observations, Trooper Helmick effectuated a stop of Rupp's vehicle and approached from the passenger side, knocking on the window. Instead of immediately responding to Trooper Helmick's knock, Rupp commenced shuffling through a number of papers on the inside of his car. After waiting approximately two minutes, Trooper Helmick knocked on the window a second time, at which point, Rupp rolled the window down.
 {¶ 4} Trooper Helmick testified that he immediately was greeted by the "strong odor" of alcohol when the window was rolled down. When engaging Rupp in conversation, Trooper Helmick noticed that Rupp's eyes were bloodshot, and that his speech was "thick." While Trooper Helmick questioned him, Rupp produced his driver's license, placed it on the dashboard, and he continued to shuffle through the documents inside the car. Trooper Helmick observed the license was knocked to the floor of the vehicle by a gust of wind. Rupp began searching for it, but was unable to locate it. Trooper Helmick told Rupp where the license had fallen, and suggested that Rupp accompany him back to the cruiser and "bring his [papers] with him."
 {¶ 5} Once Rupp was seated in the back of the cruiser, Trooper Helmick began to question him. During this questioning, Trooper Helmick asked Rupp how many *Page 3 
drinks he had consumed that night. Rupp denied drinking. Trooper Helmick then asked Rupp if he would "do a couple of tests" for him. Rupp refused. When asked why he would not submit to tests, Rupp replied that he did not "believe in them."
 {¶ 6} Trooper Helmick told Rupp that he asked him whether he had been drinking because he "could smell the alcohol" on him, and since Rupp had denied drinking anything, Trooper Helmick knew Rupp was lying.
 {¶ 7} Trooper Helmick then asked Rupp if he still did not want to submit to testing. Again, Rupp refused. Helmick then responded as follows: "Okay, well, I'm placing you under arrest."
 {¶ 8} Immediately, Rupp responded, "Okay, I'll do the tests."
 {¶ 9} Trooper Helmick responded, "No, that's alright, I'll take you to the post, and you can do a breath test, then we'll see what happens. Then we'll have to tow your car." Rupp told Trooper Helmick that he could not afford to have the car towed. Trooper Helmick responded, "Well, unfortunately we can't leave it sitting here."
 {¶ 10} Trooper Helmick then proceeded to make a call to dispatch, relaying license and registration information, which took approximately two minutes. After finishing the call, he asked Rupp about his paperwork, particularly whether he had an insurance card in his possession.
 {¶ 11} The following conversation then occurred:
 {¶ 12} Trooper Helmick: "All right, so if I asked again if you're going to do these tests, you said you're going to do them then?
 {¶ 13} Mr. Rupp: "Yes, I will."
 {¶ 14} Trooper Helmick: "Okay. [Are] you still going to say you didn't have anything to drink?" *Page 4 
 {¶ 15} Mr. Rupp: "I had a beer."
 {¶ 16} Trooper Helmick: "You had a beer?"
 {¶ 17} Mr. Rupp: "Yes, sir."
 {¶ 18} Trooper Helmick: "One beer?"
 {¶ 19} Mr. Rupp: "Yes, Sir."
 {¶ 20} Trooper Helmick: "How long ago was that?"
 {¶ 21} Mr. Rupp: "About a half hour ago."
 {¶ 22} Trooper Helmick: "Half hour ago?"
 {¶ 23} Mr. Rupp: "No, half hour to an hour. What time is it? About an hour ago."
 {¶ 24} Trooper Helmick: "About an hour ago. Well, why couldn't you have said that to begin with?"
 {¶ 25} Mr. Rupp: "I heard something on the radio that said if you refused to submit to [testing], there is nothing the police could do."
 {¶ 26} Trooper Helmick: "Oh, there's all kinds of stuff we can do."
 {¶ 27} Rupp then submitted to standard field sobriety testing, including the Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test, failing each one.
 {¶ 28} Rupp was placed under arrest, and taken to the Hiram State Highway Patrol post, where Rupp submitted to a breath alcohol test (BAC). It is undisputed that Trooper Helmick never advised Rupp of hisMiranda rights. The results of the BAC test indicated a breath alcohol concentration of .100 of one gram per 210 liters, which is above the legal limit.
 {¶ 29} Rupp was subsequently charged with two counts of Operating a Vehicle while Under the Influence of Alcohol, misdemeanors of the first degree, in violation of *Page 5 
R.C. 4511.19(A)(1)(a) (Count One) and (A)(1)(d) (Count Two), and one count of Failure to Signal Before Making a Lane Change, a minor misdemeanor, in violation of R.C. 4511.39 (Count Three).
 {¶ 30} On December 21, 2006, Rupp filed a Motion to Suppress Evidence, arguing that the results of his field sobriety tests, the observations of Trooper Helmick during those tests, and his oral statements were obtained as the result of a warrantless seizure. In a supplement to Rupp's Motion to Suppress, he further argued that the results of his BAC test should also be suppressed. A hearing was held on Rupp's motion beginning on April 10, 2007, and concluding on June 18, 2007. The trial court subsequently denied Rupp's motion, and the matter proceeded to a jury trial on October 1, 2007. Prior to trial, the State moved to enter a nolle prosequi dismissing Count One and Count Three. The trial court granted the state's motion.
 {¶ 31} The jury subsequently returned a verdict of guilty on the remaining OVI charge. The court sentenced Rupp to three days in jail, a $250 fine, and one year of administrative license suspension. The trial court stayed the execution of Rupp's sentence pending this appeal.
 {¶ 32} On appeal, Rupp raises the following assignments of error for our review:
 {¶ 33} "[1.] The trial court's failure to grant the Motion to Suppress is contrary to law and violates the appellant's due process rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Sec[tions] Five and Sixteen of the Ohio Constitution.
 {¶ 34} "[2.] The Officer's conduct during the traffics [sic] stop violated the [appellant's] due process rights as guaranteed by the Sixth and *Page 6 Fourteenth Amendments of the United States Constitution, and Article I, Sec[tions] Five and Sixteen of the Ohio Constitution."
 {¶ 35} Since both assignments of error are concerned with the trial court's denial of Rupp's motion to suppress, they will be addressed together.
 {¶ 36} "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses."State v. Ferry, 11th Dist. No. 2007-L-217, 2008-Ohio-2616, at ¶ 11
(citations omitted). "The trial court is best able to decide facts and evaluate the credibility of witnesses. Its findings of fact are to be accepted if they are supported by competent, credible evidence."State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, at ¶ 41. "Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." Ferry, 2008-Ohio-2616, at ¶ 11
(citations omitted); Mayl, 2005-Ohio-2304, at ¶ 41 ("we are to independently determine whether [the trial court's factual findings] satisfy the applicable legal standard") (citation omitted).
 {¶ 37} On appeal, Rupp does not challenge whether Trooper Helmick had probable cause to effectuate the initial traffic stop. Nor, apparently, does he challenge whether Helmick had probable cause to effectuate his arrest for OVI. Rather, Rupp's argument focuses on Helmick's failure to administer the Miranda warnings. Rupp asserts, contrary to the trial court's finding, that he was under arrest at the time the field sobriety tests were administered and, thus, the Miranda warnings were necessary.
 {¶ 38} The Fifth Amendment to the United States Constitution provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." "Although the test does not delineate the ways in which a person might be made a `witness against himself,'" the Supreme Court of the United States has "long held that *Page 7 
the privilege does not protect a suspect from being compelled by the State to produce `real or physical evidence.'" Pennsylvania v.Muniz (1990), 496 U.S. 582, 588-589, quoting Schmerber v.California (1966), 384 U.S. 757, 764 ("both federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture").
 {¶ 39} The warnings required to be given to a suspect underMiranda v. Arizona (1966), 384 U.S. 436, are designed to protect against violations of the Fifth Amendment's self-incrimination clause. Under federal law, "the Miranda rule * * * does not apply to nontestimonial physical evidence." State v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ 37, citing United States v. Patane (2004), 642 U.S. 630; State v.Henderson (1990), 51 Ohio St.3d 54, 57 ("the nonverbal results of appellee's breathalyzer and field sobriety tests are not self-incriminating statements").
 {¶ 40} Accordingly, the results of the field sobriety tests administered to Rupp and the BAC test are not rendered inadmissible because Trooper Helmick did not provide the Miranda warnings before administering the tests.
 {¶ 41} Rupp relies upon the Supreme Court of Ohio's decision inState v. Farris, 2006-Ohio-3255, for the proposition that "any violation of Miranda by the arresting officers will permit the suppression of oral and physical evidence in Ohio courts."
 {¶ 42} In Farris, the Supreme Court of Ohio held "that Section 10, Article I of the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution," in that "physical evidence obtained as a result of * * * unwarned statements * * * is inadmissible" under Ohio's self-incrimination *Page 8 
clause. Id. at ¶¶ 48-49; cf. Section 10, Article I of the Ohio Constitution ("[n]o person shall be compelled, in any criminal case, to be a witness against himself").
 {¶ 43} Rupp's reliance on Farris is inapposite under the circumstances of the present case. In Farris, the Supreme Court emphasized that "[o]nly evidence obtained as the direct result of statements made in custody without the benefit of a Miranda warning should be excluded." Id. at ¶ 49. In Farris, the police officers had questioned Farris "whether there were any drugs or drug devices in [his] car" prior to administering the Miranda warnings. Id. at ¶ 3. "Farris admitted that there was a `bowl,' i.e., a marijuana pipe, in a bag in his trunk." Id. Police proceeded to search Farris' trunk, discovering drug paraphernalia. Id. at ¶ 5.
 {¶ 44} By contrast, in the present case, Rupp made no inculpatory statements prior to giving his consent to take the field sobriety tests. Trooper Helmick had asked Rupp if he had been drinking but Rupp responded in the negative. Helmick's decision to administer the field sobriety tests and, later, the BAC were not based on anything Rupp had told him. Beyond the observation of Rupp's "thick" speech, Helmick's probable cause to perform the sobriety tests was not based on anything said by Rupp. Thus, the physical evidence obtained was not the result of unwarned statements.
 {¶ 45} Finally, we reject Rupp's argument that his statements/consent was coerced. With respect to Rupp's argument that Trooper Helmick ought to have read the Miranda warnings, "[t]he weight of authority holds that prior Miranda warnings are not required to validate consent searches, even when the consent is obtained after the defendant is effectively in custody." State v. Henson, 4th Dist. No. 05CA13, 2006-Ohio-2861, at ¶ 30 (citations omitted). Helmick did state that he was placing Rupp under arrest upon Rupp's refusal to perform the tests and that his car would be towed. As *Page 9 
noted above, Helmick had probable cause to arrest Rupp at this point. Given these circumstances, Rupp's only options were to be arrested or perform the tests. Rupp's consent was readily given without suggestion of coercion.
 {¶ 46} Rupp's first and second assignments of error are without merit.
 {¶ 47} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed. Costs to be taxed against appellant.
 CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur. *Page 1