[Cite as *State v. Davis*, 2011-Ohio-1747.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 : Case No. 10CA3188
                                        :
    vs.                                 : **Released: April 6, 2011**
                                        :
DONALD D. DAVIS,                        : <u>DECISION AND JUDGMENT</u>
                                        : <u>ENTRY</u>
    Defendant-Appellant.                :
_____

Donald D. Davis, Chillicothe, Ohio, Appellant, pro se.

Toni Eddy, Law Director, and Michele R. Rout, Assistant Law Director, Chillicothe, Ohio, for Appellee.
_____

McFarland, J.:

{¶1} Appellant, Donald Davis, appeals the Chillicothe Municipal Court's judgment convicting him of operating a vehicle under the influence of alcohol/drugs ("OVI") and a turn signal violation. On appeal, Appellant contends that 1) the trial court committed prejudicial error by failing to dismiss the charges, claiming he was not tried within statutory and constitutional speedy trial limits; 2) the trial court allowed his rights to be violated when it permitted evidence to be introduced related to his refusal to submit to chemical testing and the trooper violated his rights by not giving him Miranda warnings as soon as he stopped him; 3) the trial court erred by

admitting "misleading testimony" by the trooper and prosecutor; and 4) the State withheld evidence related to the cruiser video.

{¶2} As our calculations reveal that less than ninety days elapsed for purposes of speedy trial time before Appellant was brought to trial, we cannot conclude that the trial court erred in denying Appellant's motion to dismiss. Thus, Appellant's first assignment of error is overruled. Based upon our determinations that the trooper was not required to provide Appellant Miranda warnings prior to asking him to submit to field sobriety testing, and that Appellant's refusal to submit to testing was relevant and admissible at trial, Appellant's second assignment of error is overruled.

{¶3} Next, we could find no discrepancy in the trooper's testimony, as alleged by Appellant, and as the trial court instructed the jury that counsel's statements were not to be considered as evidence, we cannot conclude that the prosecutor's remarks prejudicially affected Appellant's substantial rights. As such, Appellant's third assignment of error is overruled. Finally, having failed to find any error with respect to the playing of the cruiser video for the jury, we overrule Appellant's fourth assignment of error.

{¶4} Accordingly, the decision of the trial court is affirmed.

## FACTS

{¶5} On December 3, 2009, at approximately 1:30 a.m., Trooper Throckmorton, an Ohio State Highway Patrolman, stopped Appellant after observing him fail to signal a turn and drive outside of marked lanes before turning into the driveway of his home.  Upon approaching Appellant's vehicle, Trooper Throckmorton noticed Appellant had a strong odor of alcohol, slurred speech, bloodshot and glassy eyes.  Thereafter, Trooper Throckmorton asked Appellant to exit his vehicle.  Upon exiting, Appellant appeared unsteady on his feet.  Trooper Throckmorton asked Appellant where he had been and how much he had had to drink, to which Appellant responded he had been at the Stardust, a bar, and had had one beer.

{¶6} Trooper Throckmorton attempted to administer a Horizontal Gaze Nystagmus test.  Before beginning the test, the trooper asked Appellant if he had any medical conditions to which Appellant responded that he had a bad back, for which he takes vicodin.  He further stated he had taken vicodin earlier in the day.  Upon performing the HGN test, Appellant appeared either unable or unwilling to follow instructions.  Appellant then refused to submit to additional field sobriety testing, at which point he was placed under arrest and provided Miranda warnings.  After being transported to the law enforcement complex, Appellant also refused to submit to a chemical test.

{¶7} On February 4, 2010, Appellant filed a motion to suppress. Pertinent to our review, Appellant sought suppression of the cruiser video, and requested a motion in limine holding that any refusals to submit to testing would not be admissible as evidence at trial. The trial court held a hearing on Appellant's motions on March 17, 2010, and issued its decision on April 5, 2010, denying both motions. Thereafter, on April 7, 2010, Appellant filed a motion to order discovery, seeking a complete, unedited copy of the original cruiser video. In support of his motion, Appellant attached a document entitled "Exhibit 'A' to Subpoena Duces Tecum," and represented to the trial court that he had made a previous request for the video, to which the State had failed to comply. However, Appellant's Exhibit A is not dated, time-stamped, or signed. Further, a copy of the alleged subpoena duces tecum to which Exhibit A was allegedly attached appears nowhere in the record before us.

{¶8} The trial court issued its ruling on Appellant's motion to order discovery by journal entry dated June 28, 2010. In that entry, the trial court stated that the parties had reached an agreement on the discovery issue. The entry also noted that although the court had attempted to set the matter for a jury trial on August 24, 2010, it had been continued to September 21, 2010, at the request of Appellant due to his counsel's unavailability. Just four days

later, on July 2, 2010, Appellant filed a motion to dismiss based upon speedy trial grounds. The trial court issued a journal entry on August 11, 2010, denying Appellant's motion to dismiss.

{¶9} The matter proceeded to trial on September 21, 2010. At trial, Trooper Throckmorton testified as to Appellant's traffic stop, his erratic driving, odor of alcohol, slurred speech, bloodshot and glassy eyes and unsteadiness. He also testified to Appellant's refusal to submit to field sobriety and chemical testing, explaining that Appellant initially attempted to do an HGN test, but that it was not able to be completed due to Appellant's failure to cooperate.

{¶10} Following deliberations, the jury found Appellant guilty of OVI and the turn signal violation. The trial court sentenced Appellant to twenty days in jail, and agreed to stay the sentence pending appeal. It is from this judgment that Appellant now brings his timely appeal.

ASSIGNMENTS OF ERROR

{¶11} Appellant sets forth four assignments of error for our review, which are as follows, verbatim:

"I.    THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO DISMISS THE CHARGES AGAINST DEFENDANT APPELLANT, FOR FAILING TO FOLLOW THE STATUTORY SPEEDY TRIAL TIME CONSTRAINTS AND DUE PROCESS UNDER THE OHIO.

II.     THE TRIAL COURT ALLOWED DEFENDANT-APPELLANT
        CONSTITUTIONAL RIGHTS TO BE VIOLATED BY ALLOWING
        REFUSAL TO TAKE TESTS AS AN ADMISSION OF GUILT.
        PUTTING UNDER ARREST WITHOUT READING
        CONSTITUTIONAL RIGHTS.

III.    ALLOWING PATROLMAN THROCKMORTON TO TESTIFY
        KNOWING HE WAS UNTRUTHFUL.  PATROLMAN
        THROCKMORTON TESTIFIED EARLIER TO FACTS THAT THE
        ANSWERS WERE DIFFERENT IN ALS & MOTION HEARING
        OF MARCH 17, 2010.  ALSO MICHELE ROUT'S OPENING
        STATEMENT WAS UNTRUTHFUL."

IV.     WITHOLDING EVIDENCE."

ASSIGNMENT OF ERROR I

{¶12} In his first assignment of error, Appellant contends that the trial

court erred by denying his motion to dismiss on speedy trial grounds.  He

asserts that the speedy trial clock began on the date of his arrest, December

3, 2009, and stopped on March 31, 2010.

{¶13} Our review of a trial court's decision regarding a motion to

dismiss for an alleged speedy trial violation involves mixed questions of law

and fact.  See, e.g., *State v. Alexander,* Scioto App. No. 08CA3221, 2009-

Ohio-1401, at ¶15.  We accord due deference to the trial court's findings of

fact if they are supported by competent, credible evidence.  *Id.*  However, we

independently determine whether the trial court properly applied the law to

the facts of the case.  *Id.*

**{¶14}** "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. R.C. 2945.71 implements this guarantee with specific time limits within which a person must be brought to trial." *State v. Blackburn,* 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, at ¶10. If the State fails to bring a defendant to trial within the time required by R.C. 2945.71 and 2945.72, the trial court must discharge the defendant upon motion made at or prior to the start of trial. R.C. 2945.73(B). The Ohio Supreme Court has "imposed upon the prosecution and the trial courts the mandatory duty of complying" with the speedy trial statutes. *State v. Singer* (1977), 50 Ohio St.2d 103, 105, 362 N.E.2d 1216; see, also, *State v. Parker* 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, at ¶14-15. We must strictly construe the speedy trial statutes against the state. See *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 1996-Ohio-171, 661 N.E.2d 706.

**{¶15}** A person charged with a first degree misdemeanor must be brought to trial "[w]ithin ninety days after the person's arrest or service of summons." R.C. 2945.71(B)(2). An accused presents a prima facie case for discharge by demonstrating that his case was pending for a time exceeding the statutory limits provided in R.C. 2945.71. See, e.g., *State v. Butcher* (1986), 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368. The burden then shifts

to the state to show that the time limit was extended under R.C. 2945.72. Id. at 31.

{¶16} We are mindful that various different motions and requests by the parties may constitute tolling events for purposes of calculating speedy trial time. For instance, the Supreme Court of Ohio has stated, in considering a question of first impression, that "[a] demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)." *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, paragraph one of the syllabus. Thus, when calculating the days elapsed for purposes of speedy trial, "certain days must be charged against the state and certain days must be charged against Appellant." See, *State v. Radabaugh*, Jackson App. No. 06CA2, 2007-Ohio-153, at ¶ 11. We are further mindful that a defendant's motion to dismiss also tolls the running of the speedy trial statute. *Radabaugh*, supra, at ¶ 20 (tolling the running of the statute from the time a motion to dismiss is filed until the matter is ruled upon by the trial court).

{¶17} In the case at bar, Appellant was arrested for OVI and a turn signal violation, both of which were misdemeanors. Therefore, the State had to try Appellant within 90 days of his arrest. Appellant was arrested on December 3, 2009. As such, Appellant should have been brought to trial

within 90 days, or by March 3, 2010, unless delays in reaching trial were

attributable to him. Appellant was not tried until September 21, 2010, or

292 days after his arrest. Thus, the question we are presented with is

whether at least 202 days of those 292 days were chargeable against

Appellant, rather than the State, in calculating speedy trial time.

{¶18} A review of the docket reveals that Appellant filed a motion to

suppress on February 4, 2010, which was not ruled upon until April 5, 2010.

As a result, 60 days were charged against Appellant during this time period.

Appellant then filed a motion to order discovery on April 7, 2010.[1] The trial

court did not rule on the motion until June 28, 2010. Thus, 82 more days

were charged against Appellant. Just four days later, on July 2, 2010,

Appellant filed a motion to dismiss based upon speedy trial considerations.

The trial court did not rule on this motion until August 11, 2010.

Accordingly, 40 more days were charged against Appellant. The time

between August 11 and August 24, 2010, the day on which the trial court

attempted to schedule the jury trial, continued to run the speedy trial clock.

However, Appellant's counsel requested a later trial date due to his

---

[1] Requests for discovery are counted against the requesting party. Here, Appellant's motion was titled as a motion to order discovery. We would normally be reluctant to charge time against Appellant for seeking what was essentially a motion to compel discovery, which implies the State's failure to cooperate and provide discovery. However, despite Appellant's representation in his motion that he had previously requested the information sought, we could not locate the prior request for discovery. As such, we treat Appellant's motion to order discovery as a demand for discovery, which would be a tolling event. *State v. Brown*, supra. Further, as Appellant filed the motion with the trial court, time was tolled against Appellant until the trial court issued its ruling on the motion.

unavailability on August 24, 2010. Based upon this request, as noted in the trial court's August 11, 2010, journal entry, the trial was scheduled for September 21, 2010, instead. As a result, we consider the time from August 24, 2010, to September 21, 2010, or 28 days, to be chargeable to Appellant.

{¶19} Based upon the foregoing, 210 of the 292 days that elapsed between Appellant's arrest and trial were tolled as a result of Appellant's various motions and requests. Eliminating these days from the total number of days, only 82 days elapsed for purposes of calculating speedy trial time. As such, we cannot conclude that the trial court erred in denying Appellant's motion to dismiss. Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶20} In his second assignment of error, Appellant contends that his constitutional rights were violated when he was placed under arrest without being read his constitutional rights, and when the trial court allowed his refusal to submit to testing to be considered an admission of guilt. We initially note that Appellant does not properly argue his assignments of error, but rather has simply set forth statements, with citation to the transcript. However, we conclude Appellant is essentially arguing that he was under arrest at the time he stepped out of his car and should have been Mirandized

at that point, before even being asked to submit to any testing. He also seems

to be challenging the trial court's decision to permit that State to introduce

the fact that he refused to submit to testing as a factor indicating guilt.

{¶21} Much like Appellant herein, in *State v. Rupp*, Portage App. No.

2007-P-0095, 2008-Ohio-4052 at ¶ 37, the appellant argued "that he was

under arrest at the time the field sobriety tests were administered and, thus

the *Miranda* warnings were necessary." In considering this argument, the

*Rupp* court reasoned as follows at ¶38-39:

> The Fifth Amendment to the United States Constitution provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." "Although the test does not delineate the ways in which a person might be made a 'witness against himself,' "the Supreme Court of the United States has "long held that the privilege does not protect a suspect from being compelled by the State to produce 'real or physical evidence.' " *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 588-589, 110 S.Ct. 2638, 110 L.Ed.2d 528, quoting *Schmerber v. California* (1966), 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 ("both federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture").
> The warnings required to be given to a suspect under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are designed to protect against violations of the Fifth Amendment's self-incrimination clause. Under federal law, "the Miranda rule * * * does not apply to nontestimonial physical evidence." *State v. Farris*, 109 Ohio St.3d 519, 849 N.E.2d 985, 2006-Ohio-3255, at ¶ 37, citing *United States v. Patane* (2004), [542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667]; *State v. Henderson* (1990), 51 Ohio St.3d 54, 57, 554 N.E.2d 104 ("the nonverbal results of appellee's breathalyzer and field sobriety tests are not self-incriminating statements").

**{¶22}** Thus, the *Rupp* court concluded that "the results of the field sobriety tests administered to Rupp and the BAC test are not rendered inadmissible because [the trooper] did not provide the Miranda warnings before administering the tests." *Rupp* at ¶40; See, also, *State v. Denney*, Fairfield App. No. 03CA62, 2004-Ohio-2024, ¶ 23; quoting *State v. Arnold* (Sept. 7, 1999), Butler App. No. CA99-02-026, 1999 WL 699866. In *State v. Arnold*, the court concluded as follows:

"Performance of a field sobriety test, like a breath or blood test, is not testimonial in nature, and therefore is not subject to the *Miranda* decision. Moreover, the request to submit to a field sobriety test is a preparatory step in a police investigation and therefore is not a 'critical stage' that would entitle appellant to a constitutional right to counsel. Finally, appellant has failed to convince us that there was any violation of his due process rights." *Arnold* at *3.

**{¶23}** Here, Appellant was stopped at approximately 1:30 a.m. after he failed to signal a turn and crossed his lane of travel several times on a curvy road. Upon initiating contact with Appellant, the trooper noticed an odor of alcohol, slurred speech, bloodshot and glassy eyes, lack of coordination and inability to follow directions. Based upon the totality of the circumstances, which included Appellant's refusal to submit to field sobriety testing, the trooper placed Appellant under arrest and then gave him Miranda warnings. Finding the reasoning in *Rupp, Denney* and *Arnold* to be persuasive and applicable to the facts sub judice, we cannot conclude that

the trooper was required to Mirandize Appellant prior to asking him to submit to testing. Further, we cannot conclude that Appellant's refusal to submit to testing was rendered inadmissible because the trooper did not provide Miranda warnings prior to asking him to submit to testing, which leads us into the next argument raised under this assignment of error.

{¶24} Appellant further argues under this assignment of error that the trial court erred in allowing his refusal to submit to testing to be introduced as evidence of guilt. The State disagrees, contending that refusal to perform field sobriety tests is relevant and admissible. Based upon the foregoing, as well as the following, we agree with the State.

{¶25} In *State v. Denney*, supra, at ¶ 24, the court noted that "evidence regarding a refusal to submit to a breath or blood test is admissible." Citing *Maumee v. Anistick*, 69 Ohio St.3d 339, 1994-Ohio-157, 632 N.E.2d 497. *Denny* found no distinction between field sobriety testing and blood or breath testing for purposes of determining whether such evidence was testimonial in nature. *Denney* at ¶ 24. Further, the *Denney* court noted its prior holding in *State v. Carrico*, Licking App. No. 01CA86, 2002-Ohio-1451, ¶ 2, where it concluded that refusal to perform field sobriety tests is relevant evidence under Evid.R. 401 and therefore, admissible at trial. Id. at ¶ 21.

**{¶26}** Other districts have also held that refusal to submit to testing is relevant and admissible.  See, *Columbus v. Bickis*, Franklin App. No. 09AP-898, 2010-Ohio-3208, ¶ 25 ("[a] defendant's refusal to perform field sobriety tests is relevant evidence under Evid.R. 401 and therefore admissible at trial."); citing *State v. Denney* at ¶ 21-24; see, also *State v. Evans*, Warren App. No. CA2009-08-116, 2010-Ohio-4402, ¶ 23 ("evidence of a refusal to submit to a chemical test is a factor that may be used against a defendant at trial."); citing *Westerville v. Cunningham*, 15 Ohio St.2d 121, 124, 239 N.E.2d 40 (concluding "that the admission of evidence, that one accused of intoxication refused to take a reasonably reliable chemical test for intoxication, and comment on such report by counsel do not violate any constitutional privilege against self incrimination.").

**{¶27}** In light of the foregoing, we cannot conclude that the trial court erred in permitting the introduction of evidence related to Appellant's refusal to submit to field sobriety and chemical testing.  Thus, Appellant's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

**{¶28}** In his third assignment of error, Appellant contends that statements made by Trooper Throckmorton and prosecutor Michele Rout were untruthful and/or misleading.  Specifically, Appellant challenges a

statement made by the prosecutor during her opening statement where she referenced that Appellant ran off the road two times. He also challenges Trooper Throckmorton's testimony regarding whether he took or refused a horizontal gaze nystagmus test.

{¶29} As Appellant seems to argue that the prosecutor's statements made during her opening statement were misleading, we will consider them under the framework for determining prosecutorial misconduct. The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 493, 1999-Ohio-283, 709 N.E.2d 484. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id. Generally, prosecutors are entitled to considerable latitude in opening statements and closing arguments. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 84 N.E.2d 912; *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14.

{¶30} During her opening statement, Prosecutor Rout stated "[t]hat on this winding, curvy, very small road, that this defendant is in the middle of the road, that his vehicle is not . . . at one point goes off the left side of the road." Appellant argues that this statement was in contradiction to testimony provided by Trooper Throckmorton at the suppression hearing,

where he testified that Appellant did not run off the road.  While we agree

with this fact, the jury did not hear the trooper's testimony at the suppression

hearing.  Additionally, although the prosecution made this erroneous

statement during opening statements, the State did not introduce any further

evidence that Appellant actually ran off the road.  At trial, Trooper

Throckmorton was not asked this question and did not testify whether

Appellant did or did not actually run off the road.

{¶31} Opening statements are not evidence and the jury was

instructed to that effect.  The transcript of the jury trial reveals that the jury

was instructed as follows prior to trial:

"Remember that attorneys are not witnesses and since is your duty to decide
the case solely on the evidence which you see or hear in this case, you must
not consider as evidence any statement of any attorney made during trial."

The jury was further instructed as follows prior to their deliberation:

"The evidence does not include any statement of counsel made during the
trial.  The opening statements and the closing arguments of counsel are
designed to assist you, but they are not evidence."

Here, although the statement made by the prosecutor was technically in

error, we do not believe that it was made in an attempt to mislead the jury.

Further, in light of the trial court's instructions to the jury regarding

statements of attorneys, we cannot conclude that the prosecutor's remarks

prejudicially affected Appellant's substantial rights.  Thus, to the extent that

it challenges the prosecutor's comments, Appellant's third assignment of error is overruled.

{¶32} We next consider Appellant's argument that Trooper Throckmorton's testimony was untruthful.  Though it is not completely clear to us, it appears that Appellant contends that Trooper Throckmorton testified during trial that Appellant refused to take a horizontal gaze nystagmus test, when, according to Appellant, he did take the test.  A review of the record reveals the following exchange during the trooper's direct examination at trial:

"Q:   Is there instructions that you give to the person who you are administering this test to with regard to how to hold their head or anything like that?

A.    Right.  The first thing I actually ask them is if they wear glasses or contacts and then I instruct them that while I'm tracking the pen back and forth, that I need them to keep their head perfectly still and just follow the pen with their eyes.

Q:    Did you ask Mr. Davis to do that?

A:    Yes I did.

Q:    Did he do that?

A:    No he did not.

Q:    What was he doing?

A:    He was just staring straight ahead.  So, as I'm looking straight ahead and the pen's going this way (demonstrating) he just kept looking right ahead.  He never followed the pen.

Q:      How many times did you attempt to get him to follow the pen?

A:      Three or four times.  I'm sorry.  I actually just mis-spoke there.  He did follow the pen for a brief second.  First thing I need to look for is equal tracking in the eyes to make sure both eyes are tracking at the same speed.  I was able to detect that in his eyes, but once I started looking for the involuntary jerking of the eyes, that's when Mr. Davis quit watching the pen.

Q:      And just started staring at you?

A:      Yes."

{¶33} In light of the foregoing testimony, it does not appear that Trooper Throckmorton was being untruthful or misleading in his testimony. To the contrary, he clarified his testimony to indicate Appellant initially cooperated in the horizontal gaze nystagmus test, but then stopped cooperating.  In fact, the record reveals that Appellant's own counsel, on cross examination, even characterized Appellant's actions as a refusal to take the test.  Further, we note that Appellant did not object to the trooper's testimony at trial.  Moreover, even assuming there was some discrepancy in the trooper's testimony, the trier of fact determines the credibility to be afforded testimony and the weight to be given evidence. *State v. Ball*, Hocking App. No. 07CA2, 2008-Ohio-337, ¶ 21, citing *State v. Dye*, 82 Ohio St.3d 323, 329, 1998-Ohio-234, 695 N.E.2d 763; *State v. Frazier*, 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000. "The factfinder may

accept or reject all, part, or none of the testimony of each witness." *In re*

*A.E.*, Greene App. No. 2006CA153, 2008-Ohio-1864, ¶ 15, citing *State v.*

*Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.

{¶34} As such, we cannot conclude that statements of the prosecutor

and the testimony of the trooper in any way misled the jury or affected the

outcome of the case.  Accordingly, Appellant's third assignment of error is

overruled.

ASSIGNMENT OF ERROR IV

{¶35} In his fourth assignment of error, Appellant appears to contend

that there were problems with the tape recorder and the video from the

cruiser camera was unreliable and should not have been shown to the jury.

Appellant further contends that the prosecutor withheld evidence by

stopping the tape prior to the part where Appellant's friend, Brandi Bivens,

showed up during the encounter with the trooper.  Other than making these

general statements, Appellant makes no argument as to what problems there

were with the tape recorder or why he considers it to be unreliable.

Likewise, Appellant fails to argue or explain how stopping the tape at a

certain point constitutes withholding of evidence by the prosecution.

{¶36} A review of the record indicates that upon trying to play the

video for the jury, it would not play properly and had to be restarted.  Other

than this, there is no indication of any other "problem" with the video. Appellant had access to the tape and could have played the remainder of the tape if he so desired. Further, Appellant introduced one witness who purported to give expert testimony based upon her review of the cruiser video. Thus, we find no error with regard to the playing of the video for the jury. Accordingly, Appellant's fourth assignment of error is overruled.

{¶37} Having overruled each of Appellant's assigned errors, we affirm the decision of the trial court.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, P.J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**