[Cite as *State v. Lane*, 2013-Ohio-2143.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 5-12-30

    v.

RACQUEL A. PACE,                   O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Findlay Municipal Court
Trial Court No. 2012CR00008

**Judgment Affirmed**

Date of Decision:   May 28, 2013

---

APPEARANCES:

    *Loretta Riddle* for Appellant

    *Robert E. Feighner, Jr.* for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Racquel Pace ("Pace"), appeals the judgment of the Findlay Municipal Court, finding her guilty of OVI, speeding, and driving with an expired license. On appeal, Pace contends that the trial court erred when it denied her motion to suppress, claiming that the State willfully engaged in the spoliation of evidence and that the officer continued to question her and perform field sobriety tests after she invoked her right to counsel. For the reasons set forth below, the judgment is affirmed.

{¶2} On October 14, 2011, at approximately 4:00 a.m., Pace was driving southbound on I-75 within the city limits of Findlay, Ohio, when she was stopped by Ohio State Trooper Matthew Geer for speeding. Upon questioning Pace, Trooper Geer noticed a "strong odor of an alcoholic beverage" coming from the vehicle, and he observed several other indicators that led him to believe that Pace was driving under the influence. After Pace performed poorly on field sobriety tests, Trooper Geer arrested her for operating a vehicle while under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a). She was also issued citations for speeding and for driving with an expired license.

{¶3} Pace filed a motion to suppress all evidence relating to the traffic stop. She asserted that the trooper lacked probable cause to initiate the traffic stop; that he lacked reasonable suspicion to request that she submit to field sobriety tests;

that the trooper did not have probable cause to arrest Pace; that the field sobriety tests were not administered in substantial compliance with testing standards; and, that the trooper continued to question Pace and conduct field sobriety tests after she invoked her right to counsel.

{¶4} A hearing on the motion to suppress was held on April 11, 2012. Trooper Geer was the only witness to testify. Trooper Geer testified that he initiated the traffic stop after he made a visual determination that Pace was traveling over the 65 mph speed limit and that two radar readings registered 77 mph and 78 mph. (Tr. 9)

{¶5} Trooper Geer further testified that when he was talking to Pace, he could "smell the strong odor of an alcoholic beverage" from within the vehicle; her words were slurred when she spoke; she was "thick fingered" and having great difficulty sorting through the paperwork to locate her registration and insurance papers; and, he observed several nearly empty wine bottles on the floor of her vehicle. (Tr. 9-13) Upon checking her driver's license through the LEADS system, he learned that it had expired ten days earlier. (Tr. 17) The trooper also observed that Pace was slow to exit the vehicle when he asked her to step out, and she acknowledged that she had consumed "a glass or two" of wine earlier that evening. (Tr. 16-18)

{¶6} Because of all of the signs of impairment that he observed, Trooper Geer then proceeded to conduct field sobriety testing. Trooper Geer testified as to his experience as a trooper and the fact that he had administered thousands of field sobriety tests over the years. The National Highway Traffic Safety Administration ("NHTSA") manual pertaining to the field tests was admitted into evidence. (Tr. 73) Trooper Geer testified as to his training concerning the tests and he testified in great detail how he administered the field sobriety tests to Pace in compliance with all aspects of the manual and required procedures. (Tr. 20-38)

{¶7} Trooper Geer conducted the horizontal gaze nystagmus test ("HGN") inside his police vehicle, where he observed six out of six "clues" on this test, three on each eye. (Tr. 19-27) This indicated to him a high level of alcohol consumption. (Tr. 27) He also observed that Pace's eyes were bloodshot.

{¶8} Trooper Geer testified that he asked Pace to do a portable breath test ("PBT"), but she refused to do that. (Tr. 27) He then conducted two more tests behind his police car: the walk and turn test and the one-leg stand. The trooper testified in detail as to the procedures that were followed and the areas where Pace failed to correctly perform the tests. He testified that he observed four of the eight clues on the walk and turn test, and three of the four clues on the one-leg stand test that would indicate impairment. (Tr. 30-33) He also had her perform a counting test and she counted incorrectly. (Tr. 34) Based upon the totality of everything he

observed, Trooper Geer testified that he believed Pace was impaired and had too much to drink in order to be able to drive safely. (Tr. 36-37) She was handcuffed and placed under arrest.

{¶9} On cross examination, Trooper Geer further elaborated on his reasons for the initial traffic stop and described in more detail the observations he made that led him to believe Pace was too impaired to safely drive a car.

{¶10} Trooper Geer acknowledged that his vehicle was equipped with a forward-facing dashboard camera for the purpose of recording evidence. (Tr. 64-65) He explained that he performs the HGN test inside the police vehicle because there is more light available there and it allows him to obtain the proper angles for holding and moving the object, and observing the subject's eyes. (Tr. 65-66)

{¶11} He further testified that he always performs the walk and turn test and the one-leg stand behind the police vehicle for safety reasons, where he can watch the traffic coming towards him. (Tr. 67-68) When asked why he did not perform these tests in front of the dashboard camera, Trooper Geer testified:

> I would like to, but on the Interstate, I have been almost hit a couple times. I have had the left side of my car peeled off so I always do it behind my car where I can see traffic coming at me. The last place I want to be is between two vehicles if somebody hits my car. At least behind my car, I can see traffic coming at me with no lights blinding me. I don't have to look out beyond my car – I can see exactly what's happening.

(Tr. 67-68)

{¶12} The trial court found that the testimony demonstrated that the trooper had a reasonable suspicion that there was a traffic violation in order to make the traffic stop and there were sufficient facts and observations to provide the trooper with a reasonable suspicion to inquire further as to whether or not Pace was in fact impaired. The trial court did not find that the trooper acted in bad faith by not recording the field sobriety tests, but stated that his actions were reasonable based upon officer safety. The trial court also found that the field sobriety tests were conducted in substantial compliance with NHTSA standards. Based on the factors that led up to the field sobriety tests and the tests themselves, there was probable cause to arrest Pace for OVI. Therefore, the trial court overruled the motion to suppress. (Tr. 79-82)

{¶13} Pace's case proceeded to a jury trial on the OVI charge and a bench trial on the other two charges. She was found guilty on all counts and sentenced on September 6, 2012.

{¶14} It is from this judgment that Pace now appeals, raising the following two assignments of error for our review.

**First Assignment of Error**

**The trial court abused its discretion by denyting [*sic*] a motion to suppress when the State willfully engages in the spoliation of evence [*sic*] by selectively choosing what evidence it wants to preserve via video recording.**

## Second Assignment of Error

**The trial court abused its discretion by denying [*sic*] a motion to suppress when [Pace] invoked her right to counsel and the trooper continued to question [Pace] and subject her to field sobriety tests.**

*Standard of Review*

{¶15} Appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8; *State v. Bressler*, 3d Dist. No. 15–05–13, 2006–Ohio–611. At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8; *State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court' findings of fact if they are supported by competent, credible evidence. *State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995). With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Wolfle*, 3d Dist. No. 11-11-01, 2011-Ohio-5081, ¶ 10; *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

*First Assignment of Error*

{¶16} In the first assignment of error, Pace contends that Trooper Geer engaged in "spoliation of evidence" because he "willfully interfered" with the evidence by performing the field sobriety tests outside of the view of the dashboard camera. (Appellant's Br. 4) Pace claims that such "destruction of evidence was designed to disrupt [her] case" and that the trooper's failure to record the evidence for possible litigation violated Pace's constitutional rights, including her sixth amendment right of confrontation. (*Id.* at 5)

{¶17} Pace cites to *Drawl v. Cornicelli*, 124 Ohio App.3d 562 (11th Dist.1997) and *Smith v. Howard Johnson Co., Inc.* 67 Ohio St.3d 28, 29, 1993-Ohio-229, in support of her assertion concerning "spoliation of evidence." In *Smith*, the Ohio Supreme Court held that a cause of action exists in tort for interference with or destruction of evidence with prospective civil litigation. *Smith* at 29. We fail to see how a tort claim is applicable in this criminal case, and do not find any evidence in the record that would support the elements concerning the willful interference with, or destruction of, evidence.

{¶18} The Ohio Supreme Court has held that R.C. 4511.19(D)(4)(b),[1] which provides that the results of field sobriety tests are admissible when the tests are administered in substantial compliance with testing standards, is constitutional so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test. *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 28. An officer may testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9. Appellant has not pointed to any statute or case law that requires field sobriety tests to be recorded. This issue has been discussed by several Ohio appellate courts.

> In *State v. Delarosa*, 11th Dist. No.2003-P-0129, 2005-Ohio-3399, the court noted: "* * * a review of NHTSA standards shows no requirement to videotape the field sobriety tests.
>
> "Furthermore, a police officer's failure to videotape field sobriety tests is more akin to failing to create evidence rather than destroying evidence. See, e.g., *State v. McDade*, 12th Dist. Nos. CA2003-09-096 and CA2003-09-097, 2004-Ohio-3627, at ¶ 17. However, 'there is no constitutional, statutory or common law duty to use a specific investigative tool in satisfying *Homan's*[2] strict compliance mandate.' *Athens v. Gilliand*, 4th Dist. No. 02CA4, 2002-Ohio-4347, at ¶ 5. As

---

[1] R.C. 4511.19(D)(4)(b) provides in pertinent part: "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test * * * and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards * * *, all of the following apply: (i) The officer may testify concerning the results of the field sobriety test so administered. (ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *."

[2] *State v. Homan*, 89 Ohio St.3d 421, 2000-Ohio-2112.

> a result, it is well established that 'a police officer's failure to make a video and audio tape of a defendant's DUI traffic stop and field sobriety tests did not violate the defendant's due process rights warranting suppression of the evidence or dismissal of the charge.' *McDade* at ¶ 17. See, also, *Gilliand* at ¶ 5; *State v. Shepherd*, 2nd Dist. No.2002-CA-55, 2002-Ohio-6383, at ¶ 26; *State v. Wooten*, 4th Dist. No. 01 CA31, 2002-Ohio-1466". *Id.* at 2005-Ohio-3399 at ¶ 48-49.

*State v. Smith*, 5th Dist. No. 09-CA41, 2010-Ohio-1232, ¶¶ 44-45.

{¶19} In *Smith*, the Fifth District Court of Appeals discussed *Arizona v. Youngblood*, 488 U.S. 51 (1988), wherein the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence. *Smith* at ¶¶ 41-43. In *Youngblood*, the United States Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood* at 57-58.[3] *See also State v. Numbers*, 3d Dist. No. 1-07-46, 2008-Ohio-513, ¶ 22. In the case before us today, the trial court specifically found that there was no bad faith on the part of Officer Geer, and that his actions were taken as a matter of safety.

{¶20} The Fourth District Court of Appeals has also discussed the issue of a law enforcement officer's failure to conduct field sobriety tests within view of the patrol car's video camera. *See State v. Wooten*, 4th Dist. No. 01 CA31, 2002-

---

[3] The *Youngblood* Court established two tests: one that applies when the evidence is "materially exculpatory" and one when the evidence is "potentially useful." If the State fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. In the case before us today, there was no claim that the State failed to preserve any materially exculpatory evidence.

Ohio-1466. In *Wooten*, the court noted that the Due Process Clause does not require the State to employ any particular investigative tool. *Id.*, *citing Youngblood*, 488 U.S. at 59. The State "has no constitutional duty to ensure that [OVI] defendants' traffic stops and sobriety tests are recorded on video or audio tape." *Wooten.* Ultimately, the court concluded that "[b]ecause no constitutional violation arises merely from a law enforcement officer's failure to employ a particular investigative tool, the suppression of evidence or the dismissal of a charge is not warranted." *Id.*; *State v. Sneed*, 4th Dist. No. 06CA18, 2007-Ohio-853.

{¶21} In the case at bar, Trooper Geer did not destroy evidence and he did not fail to preserve evidence that had been collected. There was no finding that his decision to conduct the field sobriety tests out of the range of the dashboard camera was motivated by bad faith. There is no mandate under the law as it exists at this time that requires a police officer to record field sobriety tests. Pace's assignment of error is without merit and is overruled.

*Second Assignment of Error*

{¶22} In the second assignment of error, Pace maintains that Trooper Geer should have stopped questioning her after she invoked her right to counsel under the Sixth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). This claim is

apparently in reference to a comment that was made when Trooper Geer asked Pace to take the roadside PBT.

{¶23} We do not find any evidence in the record that indicates that Pace ever affirmatively invoked a right to counsel or asked to speak with counsel. The only discussion concerning this issue occurred during Trooper Geer's testimony during cross-examination.

> Q.   And in fact, you actually had a conversation with [Pace] about the PBT, correct?
>
> A.   Correct.
>
> Q.   And do you recall that she asked you specific questions about that, did she have to take it, what were the ramifications, do you recall that?
>
> A.   She asked me, I believe she asked me what happens if I don't take it, what happens if I do take it. I think I told her that we will do other tests outside the car. She did ask me does my attorney need to be here or should my attorney be here for this, referring to what I take it if I was offering her the breath test on the side of the road, does her attorney need to be there. When she did that, that's when I put the PBT away.

(Tr. 59-60) There was no further discussion in the record concerning having an attorney present and nothing to indicate that Pace's questions to the trooper concerning the PBT amounted to a request to have an attorney present. No breath test was administered, and Pace was placed under an Administrative License Suspension pursuant to R.C. 4511.191.

{¶24} Pace has not provided any authority indicating she was entitled to *Miranda* warnings or counsel at that point in the traffic stop. In *State v. Arnold*, the Twelfth District Court of Appeals concluded:

> Performance of a field sobriety test, like a breath or blood test, is not testimonial in nature, and therefore is not subject to the *Miranda* decision. Moreover, the request to submit to a field sobriety test is a preparatory step in a police investigation and therefore is not a 'critical stage' that would entitle appellant to a constitutional right to counsel.

12th Dist. No. CA99–02–026 (Sept. 7, 1999), 1999 WL 699866; *State v. Davis*, 4th Dist. No. 10CA3188, 2011-Ohio-1747, ¶ 22. Moreover, "the nonverbal results of [a defendant's] breathalyzer and field sobriety tests are not self-incriminating statements." *State v. Henderson*, 51 Ohio St.3d 54, 57 (1990).

{¶25} There is no evidence in the record that Pace's constitutional rights to counsel or *Miranda* warnings were violated. The second assignment of error is overruled.

{¶26} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ROGERS, J., concurs.**

**PRESTON, P.J., concurs in Judgment Only.**

**/jlr**